WILLIAM LONG v. U. S. FIDELITY AND GUARANTY CO. ET AL.

(Filed 12 November, 1919.)

1. **Equity—Mutual Mistake—Accounts—Settlement—Quantum of Proof— Rescission and Cancellation.**

   Where a settlement of a monetary demand is sought to be set aside, in equity, by the creditor as insufficient, on the ground of mutual mistake of the parties, it requires the plaintiff to show the mistake that would vitiate the settlement by the preponderance of the evidence; but to correct and enforce an instrument as corrected requires the evidence to be clear, cogent, and convincing, for it calls upon the chancellor to exercise a much greater degree of power.

2. **Equity—Account—Settlement—Mutual Mistake—Cancellation.**

   Where a debtor has obtained a receipt in full from his creditor, upon payment of a less sum than was due him, by mutual mistake induced by the creditor's, or his agent's, misrepresentation, intentional or otherwise, a correction of the written receipt will not afford adequate relief, and equity may cancel the instrument and restore the parties to their original rights.

3. **Contracts—Debtor and Creditor—Settlement—Payment—Agreement— Evidence—Trials.**

   A subcontractor had a working agreement with his contractor with reference to several buildings the latter was erecting, that payments made the subcontractor were to be received and applied by him to any of the several jobs, and accounted for in the final settlement. The contractor failed, and the subcontractor sued the surety on his bond for the balance due him on one of these buildings, the "S. Hotel." Some of the checks

given by the contractor had the entry, "S. contr.," or "S. Hotel," which the plaintiff claimed should be applied to the other buildings, but defendant claimed should be deducted from the amount due on the "S. Hotel," for which alone it was responsible, and to that extent reduce its liability. *Held*, evidence as to the working plan for credits of payments, agreed to before the issuance of the checks mentioned, was competent, and the charge of the court thereon was proper.

CIVIL ACTION, tried before *Lane, J.*, at March Term, 1919, of GUILFORD.

The action was brought to recover the sum of $2,016.03, less $800, alleged to be due the plaintiff for work and labor done and materials furnished in the construction of a hotel building, at Spartanburg, S. C., the contractors, Longest & Tessier, having sublet a part of their contract, viz., the plastering, to the plaintiff. Longest & Tessier failed in business, and were adjudged bankrupts on 25 May, 1917. They were to furnish all labor and material required to perform the contract, as to furnishing labor and material, and, in order to secure their compliance therewith, they gave the usual bond with the defendant as surety. The parties proposed to settle their controversy and met for the purpose, and entered into a settlement, after which the $800 was paid.

The plaintiff further alleged:

1. That he was employed by the said Longest & Tessier Company to do the plastering in said hotel building, and furnish labor and material therefor, and that, under said contract of employment, he did furnish material and labor, and did plaster said hotel, to the amount of $13,-555.53, upon which amount there has been paid $11,539.50, leaving a balance due upon said contract for labor done and material furnished prior to the next payment hereinafter referred to of $2,016.03.

2. On or about 7 November, 1917, the defendant stated and represented to the plaintiff that the said sum of $2,016.03 due, as aforesaid, upon the Spartanburg contract, was, as a matter of fact, due to the plaintiff upon a contract entered into between the plaintiff and Longest & Tessier Company to erect a building at Radford, Va., and the defendant, the United States Fidelity and Guaranty Company, having access to said books, which plaintiff did not have, represented to the plaintiff that the books of Longest & Tessier Company showed that the statements made, as aforesaid, were true, and said defendant stated and represented to plaintiff that not more than $800 was due to him on the Spartanburg contract, and the balance was due on the Radford contract, and defendant offered to pay the plaintiff $800 if he would sign a receipt in full for all amounts due upon the Spartanburg contract, representing at the time that this was all that was due the plaintiff upon said contract; that the plaintiff thereupon, relying upon said representations, gave to

the said defendant a receipt in full for all amounts due the plaintiff on account of the Spartanburg contract, and also assigned to the defendant all his claim for compensation for the work done under the Spartanburg contract.

3. That the said settlement was obtained from the plaintiff either by mutual mistake or by false and fraudulent representations, and the plaintiff asks that the same be set aside and held for naught, but the plaintiff admits that the said defendant is entitled to an additional credit for the said sum of $800 received by him, as aforesaid, leaving as the amount due under said contract from the defendants $1,216.03.

The defendant denied the material allegations of the complaint, especially denying that $2,016.03 was due on the Spartanburg contract, and averred that, according to the books of Longest & Tessier, the sum of only $639.19 was due thereon. It admitted payment of the $800, and the execution of the receipt by plaintiff and the assignment of his claim to the defendant. Defendant, by separate allegations, goes much into detail as to the occurrences during the conference had for a settlement, which we need not set out here. The jury found that there was a settlement, which was brought about by mutual mistake.

Judgment for the plaintiff, and appeal by defendant.

*S. B. Adams, R. C. Strudwick, and Allen Adams for plaintiff.*
*John L. Rendleman and Justice & Broadhurst for defendant.*

Walker, J., after stating the facts as above: The gist of the controversy is that, as plaintiff alleges and contends, the settlement, receipt, and assignment were obtained, if not by fraud, then by mutual mistake of the parties. The issue as to the fraud was withdrawn, leaving only the issues as to the settlement, the mutual mistake and the damages. There was ample evidence to support the verdict, and the motion for a nonsuit was properly overruled.

Two questions remain for consideration, first, whether the judge should have given a different instruction in regard to the quantum or degree of proof, and instead of charging that the burden was upon the plaintiff to satisfy the jury of the mutual mistake by a preponderance of the evidence, he should have told them that it must be done by clear, strong, and convincing proof. This is a misconception of the nature of the action and the issue. The plaintiff did not seek to reform or correct the settlement, but to set it aside entirely, so that the parties would be placed *in statu quo,* and in the latter case only a preponderance of the evidence is required. The distinction is based upon a sound reason. There is a difference between cancellation or rescission and reformation of an instrument. A noted text-writer says that courts of equity do not

grant the high remedy of reformation upon a probability, or even upon a mere preponderance of evidence, but only upon a certainty of error. Pomeroy on Eq. Jur., sec. 859. It is not so with us in regard to cancellation or rescission (*Perry v. Ins. Co.,* 137 N. C., 402; *Poe v. Smith,* 172 N. C., 67), though it seems to be so in some other jurisdictions not necessary to mention. A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution; and, also, must be able to show exactly and precisely the form to which the deed ought to have been brought, and that the omission of some material thing was caused by their mistake. To reform a contract, and then enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual. 34 Cyc., at p. 917, note; *Coppes v. Keystone Paint, etc., Co.,* 36 Pa. Super. Ct., 38. This expresses the distinction between the two equities, and explains sufficiently why there should be a difference in the measure of proof. Where there is reformation, we not only correct the deed, contract or settlement as written, but compel performance of it, or enforce it, in its amended form. In the other case, we put it out of the way and restore the parties to their former position. This distinction is fully discussed in *Harding v. Long,* 103 N. C., at p. 1; *Avery v. Stewart,* 136 N. C., 426; *Glenn v. Glenn,* 169 N. C., 729; *Lehew v. Hewett,* 138 N. C., 6; *Lamb v. Perry,* 169 N. C., 436; *Ray v. Patterson,* 170 N. C., 226; *Perry v. Ins. Co., supra,* and *Poe v. Smith, supra; Boone v. Lee,* 175 N. C., 383. That a court administering equitable principles may set aside a deed, contract, or other instrument, in a proper case, where it is based upon an error of fact, or sometimes for mutual mistake, or the mistake of one party induced by the fraud of another, instead of reforming it, has been settled by authority. Bispham on Equity (9 ed.), secs. 31 and 372, at p. 472. Sometimes adequate relief cannot be granted without pursuing this course. Bispham on Equity, sec. 190, pp. 325, 326, says: "On the other hand, when there is a settlement of accounts made between parties which correctly expresses their intention, but which is founded on error, the settlement will be set aside," citing Adams Eq., 384, and numerous cases in note 1; 34 Cyc., 918; *Stuart v. Sears,* 119 Mass., 143. The written agreement by which the settlement was evidenced could not well be reformed and afford full and adequate relief, but this must be done by cancellation of the instrument and rescission of the contract of compromise and settlement, which was entered into

by ignorance and mistake as to the true facts, induced by the positive representation of the defendant's agent, albeit that it was made without fraud, and by the inadvertence and mistake of the agent. By its own conduct, for that of the agent is imputed to it, the defendant has induced the plaintiff to a course of action which will greatly prejudice him, if it is not reversed, he being without any fault, but being misled as to material facts by the agent's assertion in respect to them.

Coming to the other question, we do not see why the parties could not agree upon, or establish a custom of dealing with each other, as to the application of the payments made by the contractors to the subcontractor—the plaintiff.

As to the four checks, aggregating $1,050, on each of which was the entry, "Spartanburg Contr." or "Spartanburg Hotel," indicating some connection between them and the Spartanburg contract, the evidence is that there was an agreement from the first between the contractors, Long & Tessier, and their subcontractor, William Long, that, without regard to any such entries, the payee in the checks might apply their proceeds, when collected, to any one of the accounts, there being several, the Spartanburg, the Radford, and others, or to general account, and the question as to how the application should be made to one account or another was not to be finally determined, until the settlement, and that this agreement and custom were in force at the time these checks were given. This, therefore, is not the ordinary case of a check being given, it being expressed on its face to be in full settlement, or that it should be applied to a particular account without more. *Kerr v. Saunders,* 122 N. C., 635; *Aydlett v. Brown,* 153 N. C., 334, and *Rosser v. Bynum,* 168 N. C., 340, and cases cited. Our case falls more nearly within the principle stated in *Rosser v. Bynum, supra.* In the other cases cited the entry was explicit, and its meaning unmistakable, but in the *Rosser case,* where the entry was not so clear as to its meaning, it being "Lbr. to date," parol evidence was held to be admissible for the purpose of showing its meaning and effect, or how the parties understood it. Referring to the cases there cited, it is said: "A proper consideration of these and other cases on the subject will disclose that such a settlement is referred to the principles of accord and satisfaction, and unless the language and the effect of it is clear and explicit, it is usually a question of intent, to be determined by the jury. On perusal of the record, we do not find that any dispute had arisen between the parties when the check was given, and, applying the doctrine as stated, we do not think the words, if they were on the check when received, are sufficiently definite or conclusive to be allowed the effect given them by his Honor, and that the question should be referred to the jury as to the intent of such an entry, and we must hold that there was error in the charge in refer-

ence to the testimony bearing on this matter." There is no definite
instruction, on the face of the checks, that they should be applied to the
Spartanburg account, but a mere memorandum, which may mean that
or something else, and which is capable of explanation. At any rate,
it was competent to show that there was a subsisting agreement con-
cerning the matter, or a working arrangement, under which the plain-
tiff was at perfect liberty to apply the proceeds of the checks, when col-
lected, to open account, if he chose to do so. Whether there was such
an agreement was a question solely for the decision of the jury, and by
the verdict, charge, and evidence it appears that they accepted the plain-
tiff's version as the correct one. J. N. Longest, one of the contractors,
testified: "When we settled with William Long he was charged with all
the money we had advanced to him and given credit for all the work he
had done on all the contracts, and the general balance would be the same.
That is, if he had credited it on one job and we on another, in the final
settlement that was all adjusted. The apparent discrepancy between the
books and this statement, which shows two thousand odd dollars due,
arose from the fact that we had not had an opportunity, before the bank-
ruptcy took place, to have a general settlement with William Long. In
my judgment, if we had been able to settle with William Long, the books
and statements would have shown that we owed him on the Spartanburg
job some $2,000. The statement referred to, and marked Exhibit 'B'
for identification, was made up by our bookkeeper, Miss Lowe. That
exhibits a correct statement between our company and William Long on
the Spartanburg contract. It shows a balance due of $2,016.03."
Longest told the plaintiff, on 12 May, 1917, that the balance due him on
the Spartanburg job was $2,016.03, which plaintiff claimed to be the
true amount, and on 6 March the bookkeeper, Miss Lowe, gave the plain-
tiff a written statement of account, showing the balance to be $2,016.03,
and Tessier admitted that she was wrong when she charged the money
to the Spartanburg contract—it should have been charged to the Radford
contract. While the language of the charge may not have been very
apt to describe precisely the agreement as to the application of the
money, it was sufficiently so to show that the jury must have understood
the matter, and that the plaintiff was fully authorized to make the appli-
cation as he did. In such cases, the law looks to the intention of the
parties. As said in 30 Cyc., p. 1240: "Payments by the debtor will be
applied according to the intention of the parties where that can be
determined with reasonable certainty." The position of the defendant,
as to the law is correct, that if an application of payment had been made
it could not be revoked without the consent of the surety, as his rights
could not be prejudiced, or impaired, without his acquiescence, or against
his protest. 30 Cyc., 1250, 1251, and 1252, especially; *Davis v. Lassiter,*

112 N. C., 128; *Miller v. Montgomery*, 31 Ill., 350. *Chief Justice Ruffin* stated the principle very clearly in *Nelson v. Williams*, 22 N. C., at p. 120, where he said: "As soon as such a security is created, and by whatever means, the surety's interest in it arises; and the creditor cannot himself, nor by any collusion with the debtor, do any act to impair the security or destroy the surety's interest. He is bound not to do it. A security stands upon the same footing with a payment. If the principal direct the fund to be applied to the payment of a debt for which the surety is bound, the creditor cannot, for his own advantage, change the application to another debt. As respects the surety, the debt is paid." But the doctrine does not apply to the special facts of our case.

Our conclusion is:

First. That the charge as to the burden and degree of proof was correct, for the plaintiff did not seek to correct the settlement, but to set aside or cancel it.

Second. That the instruction in regard to the checks was without any error, as there was some evidence of authority in the plaintiff to make the application as he did, it having been done in accordance with the usual manner of conducting the business, and, under an agreement, giving him such power, which was made before the money was paid by the contractors to him.

Before taking leave of the case, we deem it proper and just to state that the evidence fully satisfies us there was absolutely no ground upon which to base an allegation of fraud or bad faith on the part of defendants' attorney, but, on the contrary, it appears very clearly to us that he acted in perfect good faith, and with the utmost frankness, and that the error resulted from the bookkeeping of the contractors, which misled him as to the true balance due on the Spartanburg contract. If the checks had been credited on that account, the balance, as stated by him, would have been approximately correct.

No error.