A-1 Pavement Marking, LLC v. APMI Corp., 2008 NCBC 13.

STATE OF NORTH CAROLINA

COUNTY OF UNION

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 3186

A-1 PAVEMENT MARKING, LLC,

        Plaintiff,

  v.

APMI CORPORATION,
LINDA BLOUNT and GARY BLOUNT,

        Defendants.

**ORDER & OPINION**

*McGuire Woods LLP by Amy R. Worley and Bradley R. Kutrow for Plaintiff.*

*Baucom, Claytor, Benton, Morgan & Wood, P.A. by Rex C. Morgan for Defendants.*

Diaz, Judge.

{1}    Before the Court is Plaintiff's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure, or, in the alternative, to Dismiss the Second, Third, Fourth and Fifth Claims for Relief in Defendants' Counterclaims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Motion").  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion.

I.

PROCEDURAL BACKGROUND

{2}    On 13 November 2007, Plaintiff A-1 Pavement Marking, LLC ("Plaintiff" or "A-1") filed a Verified Complaint against Defendants APMI

Corporation, Linda Blount and Gary Blount (collectively, the "Defendants") asserting claims for (1) breach of contract; (2) conversion; and (3) unfair competition and unfair and deceptive acts and practices, said claims arising from Plaintiff's purchase of certain assets from Defendant APMI Corporation ("APMI"). Plaintiff also sought a temporary restraining order and a preliminary injunction.[1]

{3}    On 20 December 2007, Defendants answered the Complaint and filed Counterclaims alleging Plaintiff breached certain agreements executed in conjunction with the APMI asset purchase transaction, to wit: (1) the Asset Purchase Agreement ("APA"); (2) the Promissory Note and Security Agreement; and (3) Defendant Gary Blount's Employment Agreement.

{4}    On 22 January 2008, Plaintiff filed an Amended Complaint asserting the following claims: (1) breach of contract; (2) conversion; (3) restitution/unjust enrichment; (4) civil conspiracy; and (5) unfair and deceptive acts and practices.

{5}    On 7 February 2008, Defendants answered the Amended Complaint and re-asserted their Counterclaims.

{6}    On 20 February 2008, the case was transferred to the North Carolina Business Court.

{7}    On 12 May 2008, Plaintiff filed the Motion.

{8}    On 25 June 2008, the Court heard oral arguments on the Motion.


II.

THE FACTS

A.

THE PARTIES

{9}    Plaintiff A-1 is a North Carolina limited liability company. (Am. Compl. ¶ 1.)

{10}    Defendant APMI is a North Carolina corporation. (Am. Compl. ¶ 4.)

---

[1] The presiding Superior Court judge in Union County where this action was filed entered a preliminary injunction by consent on 10 December 2007. (Order, Dec. 10, 2007.)

{11}    Defendant Linda Blount is the sole shareholder of APMI. (Am. Compl. ¶ 5.)

{12}    Defendant Gary Blount is the husband of Linda Blount and a former employee of APMI who subsequently became A-1's General Manager. (Am. Compl. ¶ 6.)

B.

THE ASSET PURCHASE TRANSACTION

{13}    On 21 April 2006, Langevin Ventures, LLC (Plaintiff's predecessor in name and interest) agreed to purchase certain assets of APMI pursuant to the APA. (Am. Compl. ¶ 8; Defs.' Answer, First Defense ¶ 8.)

{14}    At the closing, the parties executed (1) a Promissory Note establishing a payment schedule for the asset purchase transaction; (2) a Security Agreement setting forth APMI's remedies if Plaintiff failed to discharge its contract obligations; (3) an Employment Agreement, whereby Gary Blount became A-1's General Manager; and (4) covenants barring Linda and Gary Blount from competing with A-1. (Countercl. ¶¶ 4, 9, 16, 20.)

{15}    Under the terms of the APA, Plaintiff was to pay $1,500,000.00 for APMI's assets, with $500,000.00 to be paid at closing and the remaining balance due pursuant to the terms of the Promissory Note. (Defs.' Answer, Second Defense ¶ 2(a)–(c).)

{16}    The parties agreed that the assets sold pursuant to the APA would serve as collateral for the Promissory Note. (Countercl. ¶ 7.)

{17}    Pursuant to the APA, Plaintiff also agreed to assume "all long-term and current liabilities of [APMI] as of February 28, 2006." (Defs.' Answer, Second Defense ¶ 6(b).)

{18}    Section 2.3 of the APA, as it existed at closing, did not include a specific list of APMI's long-term liabilities that Plaintiff was to assume. (Defs.' Answer, Second Defense ¶ 6(b).)

{19}    Plaintiff nevertheless paid APMI's long-term liabilities for over a year after the 21 April 2006 closing. (Defs.' Answer, Second Defense ¶¶ 6–8.) However,

in or around August 2007, Plaintiff stopped making such payments. (Am. Compl. ¶¶ 27,41; Defs.' Answer, Second Defense ¶ 9.)

{20} The Promissory Note allows APMI to accelerate the debt and repossess the collateral should A-1 default. One such event of default is a "breach of the [APA] by [Plaintiff]." (Countercl. ¶ 5.)

{21} Similarly, the Security Agreement provides that Plaintiff's failure "in the discharge of any liability to [Defendants]" constitutes an incident of default. (Countercl. ¶ 5.)

{22} Finally, the covenants not to compete signed by the individual Defendants are unenforceable in the event of certain specified defaults by Plaintiff, including a breach of the APA. (Countercl. ¶¶ 16,18, 21–22.)

C.

THE EMPLOYMENT AGREEMENT

{23} As part of the asset purchase transaction, Plaintiff hired Gary Blount to serve as its General Manager. (Countercl. ¶ 9.). Blount served in that capacity until May 2007. (Am. Compl. ¶ 27.)

{24} Blount's Employment Agreement provides for payment of a bonus upon the business attaining certain performance measurements. (Countercl. ¶ 10.)

{25} Blount was not paid a bonus for his service as A-1's General Manager. (Countercl. ¶ 12.)

III.

CONTENTIONS OF THE PARTIES

{26} Defendants contend the APA does not reflect the full agreement of the parties. (Defs.' Answer, Second Defense ¶ 10.)

{27} According to Defendants, a page detailing the specific long-term liabilities to be assumed by Plaintiff in conjunction with the asset purchase transaction was inadvertently omitted from the APA. (Defs.' Answer, First Defense ¶ 10.) Defendants request that the Court reform the APA to include the omitted page.

{28}    Defendants also allege that Plaintiff's failure to pay APMI's long-term liabilities constitutes a breach of the APA as the parties intended it to be written, (Countercl. ¶ 6), and that this breach (1) is a default under the Promissory Note and the Security Agreement, thus allowing APMI to accelerate the debt and repossess the collateral, and (2) relieves the individual Defendants of their obligations under the covenants not to compete. (Countercl. ¶ 8.)

{29}    There is no dispute that Plaintiff paid APMI's long-term liabilities for over a year after the 21 April 2006 closing. (Defs.' Answer, Second Defense ¶¶ 6–8, Pl's Am. Compl. ¶ 27.) However, in or around August 2007, Plaintiff stopped making such payments, alleging that Defendant Gary Blount made the prior payments without authorization. (Defs.' Answer, Second Defense ¶ 9.)

{30}    Plaintiff also denies that any terms were omitted from the APA. (Pl.'s Answer Countercl. ¶ 2.) Regardless, Plaintiff asserts Defendants cannot claim Plaintiff is in default of a version of the APA that did not exist at the time of the alleged breaches. (Pl.'s Br. Supp. Mot. 1.)

{31}    Defendant Gary Blount claims separately that Plaintiff failed to pay him a $60,000.00 bonus to which he was entitled pursuant to the Employment Agreement. (Countercl. ¶ 12.)

{32}    More specifically, Defendant Gary Blount contends Plaintiff intentionally and improperly diverted income to affiliated companies and taxed expenses to A-1 in an effort to avoid the obligation to compensate him pursuant to the Employment Agreement bonus structure. (Countercl. ¶ 14.)

{33}    According to Blount, these actions, in addition to amounting to a breach of the Employment Agreement, also constitute unfair and deceptive trade practices. (Countercl. ¶ 14.)

{34}    Plaintiff responds that this claim fails as a matter of law because the North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA") does not support a cause of action for a simple breach of contract, particularly one based on the alleged breach of an employment agreement. (Pl.'s Br. Supp. Mot. 1.)

IV.

PRINCIPLES OF LAW

A.

MOTION TO DISMISS/MOTION FOR JUDGMENT ON THE PLEADINGS

{35}   The standard to judge the sufficiency of a complaint under Rule 12(b)(6) and Rule 12(c) of the North Carolina Rules of Civil Procedure is the same. *Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC 5 ¶ 5 (N.C. Super. Ct. May 26,1999), http://www.ncbusinesscourt.net/ncbc_website/ opinions/1999%20ncbc%205.htm.

{36}   Additionally, the "rules regarding the sufficiency of a complaint to withstand a motion to dismiss . . . are equally applicable to a claim for relief by a defendant in a counterclaim." *Barnaby v. Boardman,* 70 N.C. App. 299, 302, 318 S.E.2d 907, 909 (1984) *rev'd on other grounds*, 313 N.C. 565, 330 S.E.2d 600 (1985).

{37}   Thus, the essential question presented by the Motion is

> whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.  In ruling upon such a motion, the complaint is to be liberally construed, and the trial court should not dismiss the complaint unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief.

*Shepard v. Ocwen Fed. Bank, FSB*, 361 N.C. 137, 139, 638 S.E.2d 197, 199 (2006) (quoting *Meyer v. Walls*, 347 N.C. 97, 111–12, 489 S.E.2d 880, 888 (1997) (alteration in original)).

{38}   However,

> [w]hen considering a motion under Rule 12(b)(6), the court is not required to accept as true any conclusions of law or unwarranted deductions of fact in the complaint.  When the complaint fails to allege the substantive elements of some legally cognizable claim, or where it alleges facts which defeat any claim, the complaint should be dismissed under Rule 12(b)(6).

*Better Bus. Forms & Prods., Inc. v. Craver*, 2007 NCBC 34 ¶ 22 (N.C. Super. Ct. Nov. 1, 2007), http://www.ncbusinesscourt.net/opinions/110107%20Order% 20Motion%20to%20Dismiss%20webpage.pdf.

B.

REFORMATION

{39}    "There is always a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they had agreed and have chosen fit and proper words to express that agreement in its entirety." *Clements v. Life Ins. Co.*, 155 N.C. 57, 61, 70 S.E. 1076, 1077 (1911).

{40}    That said, "[r]eformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement." *Metro. Prop. & Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (quoting *Dettor v. BHI Prop. Co.*, 91 N.C. App. 93, 95–96, 370 S.E.2d 435, 437 (1988), *rev'd on other grounds,* 324 N.C. 518, 379 S.E.2d 851 (1989)).

{41}    "In an action for reformation of a written instrument, the [moving party] has the burden of showing that the terms of the instrument do not represent the original understanding of the parties and must do so by clear, cogent and convincing evidence." *Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981) (citation omitted). "[W]hether or not the evidence is clear, strong and convincing in a particular case is for the jury to determine." *Nw. Mut. Ins. Co. v. Hylton*, 7 N.C. App. 244, 248, 172 S.E.2d 226, 228 (1970) (quoting *Textile Ins. Co. v. Lambeth*, 250 N.C. 1, 108 S.E.2d 36 (1959)).

{42}    "[T]he general rule is that a contract, once reformed, relates back—in its effective form—to the original date of execution." *Nash Finch Co. v. Rubloff Hastings, L.L.C.*, 341 F.3d 846, 850 (8th Cir. 2003) (citation omitted); *see also Sheets v. Stradford*, 200 N.C. 36, 38, 156 S.E. 144, 146 (1930) (stating that when a

court invokes the remedy of reformation on a transaction, "its power thus invoked relates to the beginning of the transaction").

{43}   Finally, where reformation is appropriate, the court "not only correct[s] the . . . contract . . . as written, but compel[s] performance of it, or enforce[s] it, in its amended form." *Long v. U. S. Fid. & Guar. Co.*, 178 N.C. 503, 506, 101 S.E. 11, 13 (1919).

C.

THE UDTPA

{44}   To state a claim under the UDTPA, a plaintiff must allege "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (citing *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998)).

> {45}   As a general rule, there is a presumption against unfair and deceptive practice claims as between employers and employees. Ordinarily, in such a context, the claimant must make a showing of business related conduct that is unlawful or of deceptive acts that affect commerce beyond the employment relationship. The rationale behind this general rule is that pure employer-employee disputes are not sufficiently "in or affecting commerce" to satisfy the second element of a UDTPA claim.

*Gress v. Rowboat Co.*, 661 S.E.2d 278, 281–82 (N.C. Ct. App. 2008) (internal citations omitted).

{46}   Furthermore, North Carolina courts routinely dismiss UDTPA claims asserted in simple breach of contracts cases. *See Mitchell v. Linville*, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623 (2001) ("[A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract, and . . . a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an act under [the UDTPA].") (alterations in original) (quoting *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)).

{47}   Consequently, the "plaintiff must show 'substantial aggravating circumstances attending the breach to recover under the Act.'" *Johnson v. Colonial*

*Life & Accident Ins. Co.*, 173 N.C. App. 365, 370, 618 S.E.2d 867, 871 (2005) (quoting *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.,* 139 N.C. App. 360, 367–68, 533 S.E.2d 827, 832–33 (2000)).

## V.

## ANALYSIS

### A.

### BREACH OF CONTRACT CLAIMS

{48}     According to Plaintiff, Defendants' Counterclaims alleging breaches of the contract documents relating to the asset purchase transaction fail as a matter of law because Plaintiff's actions in refusing to pay APMI's long-term liabilities were consistent with the terms of the APA as they now exist.  (Pl.'s Br. Supp. Mot. 1.)

{49}     Plaintiff denies that the APA fails to reflect the parties' true agreement regarding the disputed long-term liabilities.  Plaintiff contends, however, that even if Defendants prevail on their claim for reformation of the APA, Defendants' sole remedy is a judgment for money damages as to the unpaid long-term liabilities, and not an "ex post facto" default entitling Defendants to rescind the Promissory Note, Security Agreement, and the individual Defendants' covenants not to compete.  (Pl.'s Br. Supp. Mot. 1.)

{50}     The Court disagrees.  While there is a strong presumption in favor of correctness of an instrument as written, *Hice*, 301 N.C. at 651, 273 S.E.2d at 270, a "court's principle [sic] objective is to determine the intent of the parties to the agreement."  *Holshouser v. Shaner Hotel Group Props. One Ltd. P'ship*, 134 N.C. App. 391, 397, 518 S.E.2d 17, 23 (1999).

{51}     Moreover, when a court reforms an instrument, the general rule is that "'[t]he rights of the parties are measured by the instrument as originally intended, and the effect of the reformation, as a whole, is to give all the parties all the rights to which they are equitably entitled under the instrument that they intended to execute."  66 Am. Jur. 2d *Reformation of Instruments* § 9 (2007) (citing *Gurske v. Strate,* 87 N.W.2d 703 (Neb. 1958)).

{52}    Thus, if Defendants establish by clear, cogent and convincing evidence that, because of a mutual mistake, the APA does not reflect the true intention of the parties at the original date of execution with respect to the long-term liabilities to be assumed by Plaintiff, they would be entitled to (1) have the agreement judicially reformed to correct the mistake, and (2) seek full relief for Plaintiff's alleged breach of the APA and related contract documents.  *Long*, 178 N.C. at 506, 101 S.E. at 13 (stating that when reformation is granted, the court not only corrects the contract as written, but enforces it in its amended form).[2]

{53}    Accordingly, the Court **DENIES** Plaintiff's Motion to Dismiss the Second, Third, Fourth and Fifth Claims for Relief in Defendants' Counterclaims.

B.

THE UDTPA CLAIM

{54}    Defendant Gary Blount has sufficiently pled a claim for breach of contract arising from Plaintiff's failure to pay a bonus pursuant to his Employment Agreement.  For the reasons explained below, however, Blount may not pursue a separate UDTPA violation on these facts.

{55}    The general rule is that employer-employee relationships fall outside the scope of the UDTPA.  *See Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991) (stating the statutory definition of Section 75-1.1 of the North Carolina General Statutes  does not cover employer-employee relations).  To avoid dismissal in such a context, "the claimant must make a showing of business related conduct that is unlawful or of deceptive acts that affect commerce beyond the employment relationship."  *Gress*, 661 S.E.2d at 282.

{56}    Here, Defendant Blount alleges that Plaintiff "has failed to properly account for the income and expenses of [A-1], and has included expenses associated with other affiliated companies or has diverted income to affiliated companies which

---

[2] The scope of any such relief is not before me at this time.  The Court, however, retains "discretion to shape the relief in accord with its view of the equities or hardships of the case."  *Roberts v. Madison County Realtors Ass'n,* 344 N.C. 394, 401, 474 S.E.2d 783, 788 (1996).

should have been attributed to A-1 . . . with the express purpose of depriving Defendant of his proper bonus payment." (Countercl. ¶¶ 13–14.)

{57}  This allegation is insufficient to support Blount's UDTPA claim for two reasons.

{58}  First, A-1's alleged accounting misdeeds arguably relate to matters of internal corporate governance, which are insufficient to sustain a UDTPA claim. *Maurer v. SlickEdit, Inc.,* 2005 NCBC 1, ¶ 40 (N.C. Super. Ct. May 16, 2005), http://www.ncbusinesscourt.net/opinions/2005%20ncbc%201.htm (stating matters involving the internal governance of a corporation do not qualify as "in commerce" for purposes of an UDTPA claim).

{59}  Second, Blount alleges nothing more than a breach of contract claim, which the cases uniformly hold to be outside the scope of the UDTPA. *See, e.g., Branch Banking & Trust Co.,* 107 N.C. App. at 62, 418 S.E.2d at 700 (stating even intentional breaches of contract are not sufficient to be unfair or deceptive and indicating plaintiff must show substantial aggravating circumstances attending the breach to recover under the UDTPA).

{60}  In this context, it does not matter that the purported breach resulted from A-1's alleged accounting irregularities, as that fact alone is insufficient to elevate a contract dispute into an UDTPA claim.

{61}  Accordingly, the Court **GRANTS** Plaintiff's Motion as to that portion of Blount's Counterclaim purporting to allege a violation of the UDTPA.

VI.

CONCLUSION

{62}    The Court **DISMISSES** that portion of the Third Claim for Relief in Defendants' Counterclaims purporting to allege a violation of the UDTPA.

{63}    In all other respects, Plaintiff's Motion is **DENIED**.


**SO ORDERED** this the 4th day of August, 2008.