Thompson Installations, Inc. v. Stock Building Supply, LLC, 2012 NCBC 12.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 5650

THOMPSON INSTALLATIONS, INC., )
                    Plaintiff )
                     )
                     )
          v. )
                     )
STOCK BUILDING SUPPLY, LLC, )
                  Defendant )

**OPINION AND ORDER ON MOTION
FOR PARTIAL JUDGMENT
ON THE PLEADINGS
AND MOTION TO AMEND**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, further references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon Defendant's Motion for Partial Judgment on the Pleadings (the "Motion for JOP"), pursuant to Rule 12(c), North Carolina Rules of Civil Procedure ("Rule(s)"), and Plaintiff's Motion for Leave to File Amended Complaint (the "Motion to Amend") (collectively, the "Motions"), pursuant to Rule 15; and

THE COURT, having considered the Motions, the briefs and arguments in support of and in opposition to the Motions and appropriate matters of record, CONCLUDES that the Motions should be GRANTED, for the reasons stated herein.

*Meynardie & Nanney, PLLC, by Robert A. Meynardie, Esq. for Plaintiff.*

*Ellis & Winters LLP, by Thomas H. Segars, Esq., Jeremy Falcone, Esq. and Leslie C. Packer, Esq. for Defendant.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On April 11, 2011, Plaintiff Thompson Installations, Inc. ("Thompson") filed its Verified Complaint (the "Complaint") in this civil action against Defendant Stock Building Supply, LLC ("Stock").

[2]     Plaintiff alleges the following causes of action ("Claim(s)"):  First Claim – Breach of Contract, Second Claim – Breach of Contract and Third Claim – Unfair Trade Practices/Unlawful Restraint on Trade.

[3]     On June 13, 2011, Defendant filed an Answer.

[4]     On July 6, 2011, Defendant filed the Motion for JOP.

[5]     The Motion for JOP seeks judgment in Defendant's favor on Plaintiff's Third Claim – Unfair Trade Practices/Unlawful Restraint on Trade (the "Chapter 75 Claim").

[6]     On September 27, 2011, the court heard oral argument on the Motion for JOP.

[7]     On December 8, 2011, Plaintiff filed the Motion to Amend, seeking to add more specific factual allegations to the Complaint in support of its Claims.

[8]     The Motions have been fully briefed and are ripe for determination.

## FACTUAL BACKGROUND

Among other things, the Complaint[1] alleges that:

[9]     Plaintiff is a North Carolina corporation with its principal office located in Wake County, North Carolina.[2]

---

[1] For purposes of considering the Motions, the court will refer to the allegations of the proposed Amended Complaint, attached as Exhibit A to Plaintiff's Motion to Amend.

[10]     Defendant is a North Carolina limited liability company with its principal office located in Wake County, North Carolina.[3]

[11]     Plaintiff is in the business of installing doors and windows.[4]

[12]     Defendant is in the business of selling building supplies, including doors and windows.[5]  Defendant is the largest supplier of installed windows and doors in the Raleigh, Durham and Chapel Hill areas.[6]

[13]     On or about July 15, 2005, Plaintiff and Defendant entered into an agreement (the "Contract") whereby Plaintiff agreed to act as an independent contractor for the installation of doors and windows supplied by Defendant.[7]

[14]     The Contract was to be "non-exclusive," meaning that either party was permitted to enter into similar agreements with competitors of the other party.[8]

[15]     The Contract was also terminable by either party at any time as to future jobs.[9]  In other words, the Contract was terminable on a job-by-job basis.

[16]     After entering into the Contract, Defendant's employees and agents told Plaintiff that it was not permitted to engage in installation services for Defendant's competitors.[10]

[17]     On several occasions, Plaintiff was approached by competitors of Defendant's competitors and asked to perform installation services.[11] On each such occasion, Plaintiff requested permission from Defendant to perform services for those

---

[2] Amd. Compl. ¶ 1.
[3] *Id.* ¶ 2.
[4] *Id.* ¶ 3.
[5] *Id.* ¶ 4.
[6] *Id.* ¶¶ 16, 33.
[7] *Id.* ¶ 5.
[8] *Id.* ¶ 7, Ex. A ¶ 1.H.
[9] *Id.* Ex. A.
[10] *Id.* ¶ 9.
[11] *Id.* ¶ 10.

competitors. Defendant told Plaintiff that such conduct was against Defendant's policy, and the Contract would be terminated if Plaintiff performed work for Defendant's competitors.[12]

[18]    On one occasion, Plaintiff was directed to terminate its own subcontractor because the subcontractor was performing work for one of Defendant's competitors.[13]

[19]    At all times relevant to this action, Defendant was providing Plaintiff with more than 200 installation jobs per week, while Defendant's competitors were providing Plaintiff with less than twenty (20) installation jobs per week.[14]

DISCUSSION

Plaintiff's Motion to Amend

[20]    Plaintiff's Motion to Amend seeks to add more factual allegations to support its Claims, primarily relating to Plaintiff's Chapter 75 Claim.

[21]    Defendant opposes the Motion to Amend to the extent it seeks to add allegations related to the Chapter 75 Claim. Defendant does not oppose the Motion to Amend to the extent the added allegations relate to the breach of contract Claims.

[22]    Pursuant to Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." *See, e.g.*, *Pickard v. Pickard*, 176 N.C. App. 193, 195 (2006) ("Rule 15(a) contemplates liberal amendments to the pleadings, which should always be allowed unless some material prejudice is demonstrated.").

[23]    Consistent with the liberal standard of Rule 15, the court concludes that Plaintiff's Motion to Amend should be GRANTED.

---

[12] *Id.* ¶ 11.
[13] *Id.* ¶ 14.
[14] *Id.* ¶ 19.

## Defendant's Motion for JOP

[24]     Defendant seeks judgment in its favor on Plaintiff's Chapter 75 Claim. Defendant contends that the substance of Plaintiff's First and Second Claims is alleged breach of contract and that North Carolina law does not recognize Chapter 75 liability for a simple breach of contract.[15]

[25]     Plaintiff responds by arguing that the nature of Defendant's breach of contract was "anti-competitive" and coercive, which Plaintiff contends is sufficient conduct to support its Chapter 75 Claim.[16]  In essence, Plaintiff argues that Defendant's conduct went far beyond a mere breach of contract.[17]

[26]     In its responsive brief and at oral argument, Plaintiff put forth two separate theories of Defendant's liability under Chapter 75 – arguing that both G.S. 75-1.1 and 75-2 support its Chapter 75 Claim.  As such, the court in turn addresses both theories of liability below.

## Legal Standard

[27]     In considering a motion for judgment on the pleadings under Rule 12(c), the court will grant the motion if "no material issue of fact remains to be resolved" and "the movant is entitled to judgment as a matter of law." *Groves v. Cmty. Hous. Corp. of Haywood Cnty.*, 144 N.C. App. 79, 86-87 (2001) (citations omitted).  Further, the court will "view the facts and permissible inferences in the light most favorable to the non-moving party [ ], taking all well-pleaded factual allegations in the non-moving party's pleadings as true." *Id.*  The standard of review for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Akzo Nobel Coatings Inc. v. Rogers*, 2011

---

[15] Mem. Supp. Stock's Mot. Partial J. Pleadings 2.
[16] Pl. Resp. Def. Mot. Partial J. Pleadings 5.
[17] *Id.*

NCBC 41, ¶ 32 (N.C. Super. Ct. Nov. 3, 2011).  The function of Rule 12(c) is to "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit" as a matter of law.  *Id.* (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974)).

Liability Under G.S. 75-1.1

[28]     Plaintiff contends that Defendant is exposed to liability to it under Plaintiff's Chapter 75 Claim because Defendant allegedly engaged in unfair methods of competition or unfair or deceptive acts or practices in the course of its business dealings with Plaintiff.  Defendant argues that in substance this civil action is simply a breach of contract claim and that Plaintiff's Chapter 75 Claim fails as a matter of law.

[29]     As envisioned by G.S. 75-1.1, "[A] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367 (2000) (quoting *Warfield v. Hicks*, 91 N.C. App. 1, 8 (1988)).  An unfair act or trade practice is committed where the party "engages in conduct manifesting an inequitable assertion of power or position."  *Gray v. N.C. Ins. Underwriting Assocs.*, 352 N.C. 61, 68 (2000).  "The 'relevant gauge' of an act's unfairness or deception is '[t]he effect of the actor's conduct on the marketplace.'"  *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172 (2009) (quoting *Ken-Mar Finance v. Harvey*, 90 N.C. App. 362, 365 (1988)).

[30]     "Whether an act or practice is unfair or deceptive in violation of [Section] 75-1.1 is a question of law for the court."  *Tel. Servs. v. Gen. Tel. Co.*, 92 N.C. App. 90, 92 (1988).  Moreover, disposition of a Chapter 75 claim is appropriate at the pleadings stage because "North Carolina courts routinely dismiss UDTPA claims asserted in

simple breach of contract[] cases." *A-1 Pavement Marking, LLC v. APMI Corp.*, 2008 NCBC 13 ¶ 46 (N.C. Super. Ct. Aug. 4, 2008).

[31]    The mere breach of a contract will not constitute a Chapter 75 violation under G.S. 75-1.1. *See Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42 (2006); *Eastover Ridge*, 139 N.C. App. at 367-68 ("'[A]ctions for unfair or deceptive trade practices are distinct from actions for breach of contract, and . . . a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.'") (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62 (1992)).

[32]    To seek liability under G.S. 75-1.1 in the context of a breach of contract action, the plaintiff must establish "substantial aggravating circumstances attendant to the breach of contract." *Gray*, 353 N.C. at 75 (citations omitted).  The Court of Appeals noted that "given this substantial requirement, it is, in fact, 'unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations.'" *Ford v. All-Dry of the Carolinas, Inc.*, No. COA10-931, 2011 N.C. App. Lexis 713, *11 (N.C. Ct. App. Apr. 19, 2011) (quoting *Eastover Ridge*, 139 N.C. App. at 368).  "[A] breach of contract can give rise to [an] unfair and deceptive practices claim under circumstances that can be characterized as extreme." *Graywater Traders, Inc. v. B & B on the Beach, Inc.*, No. COA06-1612, 2007 N.C. App. Lexis 1850, *9 (N.C. Ct. App. Aug. 21, 2007) (citation omitted).

[33]    The court acknowledges that North Carolina case law does not define clearly what constitutes a "substantial aggravating circumstance."  Instead, such

determinations are made by courts on a case-by-case basis because the unfair or deceptive nature of an act is fact specific. *Carcano*, 200 N.C. App. at 171.

[34] In the instant case, Plaintiff contends that Defendant's use of "threats and coercive tactics" to force Plaintiff to refuse work from competitors constitutes the "substantial aggravating circumstances" necessary to support a G.S. 75-1.1 violation. In essence, Plaintiff argues that the wrongful termination of a contract aimed at achieving exclusivity (i.e., breach of contract coupled with anti-competitive intent) is a "substantial aggravating circumstance" and more than a "mere" breach of contract.[18]

[35] Plaintiff relies upon *Ray v. United Family Life Insurance Company*, which arguably supports the proposition that liability under G.S. 75-1.1 may be based on a defendant's coercion "by demanding exclusive dealings" with a plaintiff. 430 F. Supp. 1353, 1358 (W.D.N.C. 1977). In that case, the plaintiff's G.S. 75-1.1 claim survived summary judgment where he forecast evidence that the defendant terminated plaintiff's agency relationship with defendant after using coercive tactics to force the plaintiff to discontinue working for a competitor. *Id.* at 1355. At first glance, *Ray* appears to support Plaintiff's argument that the act of coercing exclusivity could constitute an unfair practice under G.S. 75-1.1. However, the federal district court in that case did not analyze the substance of the statute or conclude that such conduct, alone, was sufficient to support a claim under G.S. 75-1.1. Further, *Ray* is distinguishable from the

---

[18] Pl. Resp. Def. Mot. Partial J. Pleadings 5. However, Plaintiff's counsel's own words do not help its argument on this point. Rather, in his brief opposing Defendant's Motion, counsel wrote that "Defendant's intent is not relevant to this Motion but obviously had the effect of restraining trade." Pl. Resp. Def. Mot. Partial J. Pleadings 7. As a result, Defendant contends that Plaintiff should be judicially estopped from arguing that anti-competitive intent is potentially a substantial aggravating factor. *See* Br. Resp. Mot. Leave Amend 5. In view of the court's conclusion with regard to this Third Claim, it is not necessary for the court to determine whether the doctrine of judicial estoppel should be applied to limit Plaintiff's argument.

present case because the plaintiff there also alleged a violation of the Sherman Act based upon the defendant's alleged intent to monopolize the relevant market. *Id.* at 1355-56. Specifically, the plaintiff alleged that defendant's actions were anti-competitive because he had a "commanding share" of the market and was "dangerously close to a monopoly." *Id.* at 1359. Here, Plaintiff alleges no monopoly or attempted monopoly by Defendant. Instead, the Amended Complaint merely avers that Defendant controlled approximately sixty percent (60%) of the market for installed windows and doors in the Raleigh, Durham and Chapel Hill areas.[19] While this allegation describes Defendant's overall position in the market, it falls short of alleging facts sufficient to show that Defendant had or was attempting to form a monopoly in the local market for installed doors and windows.

[36] Defendant supports its Motion for JOP by citing the Court of Appeals decision *Telephone Services, Inc. v. General Telephone Company*, 92 N.C. App. 90, 92 (1988), which is more instructive to the case *sub judice*. In that case, the defendant telephone equipment seller hired the plaintiff as a telephone equipment installer to perform installations for defendant's customers. *Id.* at 91. The plaintiff argued that defendant was "unfairly using its position of power" in an attempt to "force" plaintiff to abandon its work with competitors. *Id.* at 93. In fact, it was alleged that the defendant was taking advantage of its "monopoly status as a public utility" to force the plaintiff into abandoning any competitive work. *Id.* The plaintiff in that case even alleged an adverse effect on competition based on defendant's unfair anti-competitive practices, namely, higher costs to consumers. *Id.* at 91. Nonetheless, the Court of Appeals disagreed with the plaintiff's contentions and affirmed dismissal of the plaintiff's G.S. 75-

---

[19] Amd. Compl. ¶ 17.

1.1 claim, reasoning that "[i]n the absence of conspiracy or monopoly, one may deal with whom he pleases." *Id.* at 93.

[37] The facts of *Telephone Services* are analogous to the present case as both involve contractual disputes between a supplier and the installer of that supplier's products. In both cases, the installer brought suit against the supplier alleging that the supplier terminated the contractual relationship in an anti-competitive manner, which it was argued constituted an unfair trade practice. *Id.*

[38] Here, Plaintiff's allegations of a violation under G.S. 75-1.1 are noticeably weaker than the allegations made by the plaintiff in *Telephone Services*. For example, Plaintiff's allegations fail to identify how Defendant's practices resulted in an adverse effect on market competition, namely higher costs to consumers. *Id.* at 91. More significantly, Plaintiff's Amended Complaint fails to make any allegations of monopoly or conspiracy. *Id.* at 93-94.

[39] Following *Telephone Services*, the court disagrees with Plaintiff's contention that Defendant's "threatening and coercive conduct,"[20] regardless of Defendant's potentially anti-competitive intent, amounts to a substantial aggravating circumstance sufficient to support a claim under G.S. 75-1.1 in this breach of contract setting. Accordingly, the court CONCLUDES that Plaintiff has failed to state a claim that Defendant committed unfair or deceptive trade practices under G.S. 75-1.1.

---

[20] Amd. Comp. ¶ 40.

## Liability Under G.S. 75-2

[40]     Plaintiff also argues that Defendant's liability is not limited to a claim under G.S. 75-1.1. Rather, Plaintiff contends that Defendant's conduct also constituted an actionable unlawful restraint on trade in violation of the common law under G.S. 75-2.[21]

[41]     However, Plaintiff's original Complaint only makes a general reference to Chapter 75, and not to G.S. 75-2 specifically. In addition, Plaintiff's response brief[22] cites no case law in support of its argument that Plaintiff has pleaded sufficiently a violation of G.S. 75-2, and Plaintiff's counsel conceded in open court that he did not intend to plead a violation of G.S. 75-2 when he drafted the original Complaint. Further, the Amended Complaint makes reference to alleged violations only of G.S. 75-1.1.

[42]     Based upon Plaintiff's failure to plead or otherwise raise G.S. 75-2 in the Amended Complaint, the court CONCLUDES that Plaintiff has abandoned any claim under that statutory provision. Consequently, further discussion in this regard is not necessary.[23] Accordingly, the court CONCLUDES that Plaintiff has failed to state a claim that Defendant's conduct constituted an unlawful restraint on trade in violation of the common law under G.S. 75-2.

[43]     Defendant's Motion for JOP upon Plaintiff's Chapter 75 Claim should be GRANTED.

---

[21] Pl. Resp. Def. Mot. Partial J. Pleadings 7.

[22] Plaintiff's argument in support of a claim under G.S. 75-2 is less than a page in length.

[23] Even were it to be considered, *arguendo,* that Plaintiff has not abandoned such a claim, it is clear that Plaintiff has failed to state a claim for relief under G.S. 75-2. *United Roasters Inc. v. Colgate-Palmolive Co.*, 485 F. Supp. 1041, 1047-48 (E.D.N.C. 1979) (recognizing that to state a G.S. 75-2 claim, damage to the public must be alleged). To state a claim under G.S. 75-2, it must be alleged that the conduct complained of not only had an anticompetitive effect, but that it also harmed consumers. *Id.* "Harm to one or many competitors will not suffice." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002). Plaintiff has not done that here. Instead, the injury alleged is limited to Plaintiff's business losses, based largely on damages arising from the alleged breach of contract.

NOW, THEREFORE, it hereby is ORDERED that:

[44]     Plaintiff's Motion for Leave to File Amended Complaint is GRANTED.

[45]     Plaintiff shall file and serve the proposed Amended Complaint, attached as Exhibit A to the Motion to Amend, no later than ten (10) days from the date of entry of this Order.

[46]     Defendant's Motion for Partial Judgment on the Pleadings is GRANTED with regard to Plaintiff's Third Claim, and said Claim is DISMISSED.

This the 21st day of February, 2012.