HORACE WELLS v. NORTH CAROLINA NATIONAL BANK, T. GRAY ELLIS, D/B/A ELLIS INSURANCE AGENCY

No. 7926SC85

(Filed 15 January 1980)

**Insurance § 2.2— lender's failure to procure fire insurance—summary judgment for lender**

Summary judgment was properly entered for defendant bank in an action to recover damages for the alleged failure of defendant to procure fire insurance on property purchased by plaintiff and financed by defendant where the evidence showed no language or conduct on the part of defendant's employee which constituted a representation or promise that defendant would obtain fire insurance coverage on plaintiff's property.

APPEAL by plaintiff from *Walker (Ralph A.), Judge.* Judgment entered 23 October 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 September 1979.

By this action plaintiff seeks to recover damages resulting from the alleged failure of defendants, North Carolina National Bank (NCNB) and T. Gray Ellis, doing business as Ellis Insurance Agency (Ellis), to procure fire insurance on property purchased by plaintiff. In his complaint, plaintiff alleged: He filed an upset bid on certain property subject to a foreclosure sale, and NCNB agreed to finance the purchase of the property and other obligations concerning the property; NCNB informed plaintiff that it would make certain arrangements for fire insurance coverage on the property and informed plaintiff's attorney that it would transfer the purchase money to the plaintiff's attorney's trust account when fire insurance had been obtained and other details resolved. NCNB later transferred the purchase money as promised. As a result of these representations plaintiff reasonably relied on the belief that fire insurance had been obtained for the property, but, in fact, no fire insurance had been procured. Subsequently, and on 29 November 1976, a restaurant located on the property was destroyed by fire, and at the time of the fire, the insurance coverage allegedly represented as obtained would have had a face value of at least $85,000.

NCNB answered and averred that it had neither a duty to obtain fire insurance nor had represented to plaintiff that fire insurance would be procured. NCNB counterclaimed to recover $101,000, an amount allegedly owed by reason of plaintiff's default under the loan agreement.

After discovery was taken, NCNB's motion for summary judgment was granted. Plaintiff appeals.

Other facts pertinent to this opinion will be stated below.

*Walker, Palmer & Miller, by James E. Walker, Douglas M. Martin and Raymond E. Owens, Jr., for plaintiff appellant.*

*Moore and Van Allen, by John T. Allred and Robert D. Dearborn, for defendant appellee, North Carolina National Bank.*

MORRIS, Chief Judge.

The sole question presented by this appeal is whether the trial court erred in granting summary judgment in favor of defendant NCNB. Rendition of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979); *Railway Co. v. Werner Industries, Inc.*, 286 N.C. 89, 209 S.E. 2d 734 (1974); *First Federal Savings and Loan Association v. Branch Banking and Trust Co.*, 282 N.C. 44, 191 S.E. 2d 683 (1972); *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The record in this appeal consists of pleadings, depositions, and certain exhibits.

We are of the opinion that summary judgment was proper under the facts of this case. In the materials presented we find no issue of material fact to be submitted to a jury for determination. Plaintiff testified by deposition that he had placed an upset bid on property and that he contacted Ellis about insuring the property. Ellis informed him that obtaining coverage would be difficult and that he would have to get "four or five or six" companies to share the risk of coverage. Plaintiff testified further that he contacted Tim Hilton at NCNB concerning financing, and thereafter the parties underwent negotiations:

> During my previous conversation with Tim Hilton of NCNB, I told him I would need an answer on the loan pretty quick because they were ready for me to purchase the property. He wanted to know who I write my insurance through and I told him what I had done and what Mr. Ellis had said. Hilton took down Ellis' name and said, "I will contact him after I get the loan approved." He went uptown the next morning, I believe, to the main office [of NCNB] and he called me the next afternoon and told me to come in the office. I went over and sat down and talked with him and he gave me the facts and figures and what we could do on the loan . . . I told Mr. Hilton I had already contacted Ellis Insurance Agency and had requested insurance. I had no other conversation with Mr. Hilton about insurance until after the fire.

Anthony diSanti, the attorney handling the purchase of the property on behalf of plaintiff, testified by deposition as follows:

> Regarding the matter of fire insurance, Mr. Wells [plaintiff] advised me that he had dealt with and was currently dealing with . . . an agency in Charlotte . . . During one of our meetings, we discussed this and I telephoned Mr. Tim Hilton with North Carolina National Bank in Charlotte . . . [T]he gist of the conversation was that Mr. Wells would use the company in Charlotte. Mr. Wells and Mr. Hilton were in Charlotte and they would take care of the insurance . . . I asked about the fire insurance on the building. Mr. Wells advised me he had a company in Charlotte and would use them. Mr. Tim Hilton advised me that he and Mr. Wells would get the insurance . . . Mr. Wells told me that he had an insurance company in Charlotte that he wanted to insure the Red Roof Property. I advised Mr. Hilton that Mr. Wells had informed me that he had a company in Charlotte which he would use.

In a letter dated 10 December 1976, diSanti stated what he believed concerning the matter of insurance on the property:

> All matters pertaining to this loan were discussed between myself, Mr. Wells and Tim Hilton of NCNB by phone conversation. In effect, the insurance question was handled as follows. Since Mr. Wells had a good relationship with an insurance firm in Charlotte he stated that he would insure the building with this firm and I believe he notified Mr. Hilton of his intention. Mr. Hilton . . . stated that he would take care of the insurance with Mr. Wells in Charlotte.

Hilton's affidavit contained the following:

> Mr. diSanti telephoned me and said that Mr. Wells had an agency in Charlotte he would use. I told Mr. diSanti that would be fine and I would discuss all loan details with Mr. Wells when he returned to Charlotte. Subsequently, Mr. Wells came by my office and told me that he had obtained the fire insurance from Ellis Insurance Company. Accordingly, I forwarded the loan proceeds to Mr. diSanti's escrow account.

It is apparent that the question is whether the statements and conduct by Hilton constituted a promise that he would procure in-

surance on the property which would entitle plaintiff reasonably to rely on such assurances.

Under the facts presented, we find no language or conduct on the part of NCNB that constitutes a representation or promise that it would obtain fire insurance coverage on plaintiff's property. A promise has been defined as "a declaration which binds the person who makes it, either in honor, conscience, or law, to do or forbear a certain specific act, and which gives to the person to whom made a right to expect or claim the performance of some particular thing." Black's Law Dictionary 1378 (4th ed. 1951). *See also* 17 C.J.S. *Contracts* § 1(1) (1963). Taking the evidence presented in a light most favorable to plaintiff, as we are required to do, we nonetheless find that the only statements ever made by Hilton concerning insurance are that he told plaintiff he would contact Ellis after the loan was approved, and that he told diSanti that he would take care of the insurance with Mr. Wells in Charlotte. Standing alone, these statements do not give plaintiff the right to expect that fire insurance coverage would be obtained without further effort on his part.

Neither do the surrounding circumstances lend themselves to the conclusion that NCNB had obligated itself to procure fire insurance on the subject property. According to plaintiff's own testimony, on at least two occasions he told Hilton that he had already contacted Ellis about fire insurance for the property. Further, there is no evidence that plaintiff and NCNB ever discussed the type or amount of insurance appropriate for the property, which would indicate some intention by NCNB to act on behalf of plaintiff. Finally, there is no indication that a fiduciary relationship or course of dealing existed between plaintiff and NCNB such that would create a duty on the part of NCNB to attend to details of plaintiff's purchase other than the financial services it offered.

Plaintiff argues that NCNB represented to him that fire insurance had been obtained on the subject property, in that plaintiff "presumed that because NCNB advanced the money, Mr. Ellis had acquired the insurance." Plaintiff contends that, since NCNB normally required insurance on loan transactions such as this one, NCNB obligated itself to purchase insurance before it transferred funds. This contention is wholly without merit. Such a require-

ment was obviously for the benefit of NCNB in order to protect the collateral upon which it made the loan. Hilton's responsibility concerning the insurance, therefore, ran to NCNB and not to plaintiff. From a review of the record it is apparent that Hilton forwarded the funds upon the mistaken presumption that the property would be insured. The result of such an error here is that NCNB can no longer rely on the improvements on the property as security for its loan because of their destruction, but this in no way makes NCNB liable for plaintiff's losses as well.

Since there is no evidence that NCNB expressly or impliedly agreed to acquire fire insurance for the benefit of plaintiff, and no issue of material fact for disposition by a jury, the trial court's granting of summary judgment in favor of defendant NCNB is

Affirmed.

Judges PARKER and MARTIN (Robert M.) concur.