BRANCH BANKING AND TRUST COMPANY v. BENJAMIN E. THOMPSON
AND GEORGIE C. THOMPSON

No. 913SC687

(Filed 21 July 1992)

1. **Guaranty § 17 (NCI4th); Uniform Commercial Code § 35 (NCI3d) — impairment of collateral — discharge defense — accommodation party**

   The defense of discharge because of impairment of collateral provided in N.C.G.S. § 25-3-606(b)(1) is available to all parties who occupy the position of an accommodation party but is not available to non-accommodating makers or co-makers.

   **Am Jur 2d, Guaranty §§ 79-96.**

   **What constitutes unjustifiable impairment of collateral, discharging parties to negotiable instrument, under UCC § 3-606(i)(6). 95 ALR3d 962.**

BRANCH BANKING AND TRUST CO. v. THOMPSON

[107 N.C. App. 53 (1992)]

2. **Uniform Commercial Code § 33 (NCI3d) — signatures on note — co-makers rather than accommodation parties**

Defendants executed a promissory note as co-makers and not as accommodation parties and were not entitled to assert the defense of discharge where their signatures appear on the lines reserved for co-makers; their signatures were not given or necessary for the purpose of aiding the two other signees of the note to obtain the loan but were part of a business venture for which the other signees had already secured the loan; and defendants entered the venture with the expectation of receiving profits.

**Am Jur 2d, Bills and Notes §§ 109 et seq.**

3. **Fiduciaries § 1 (NCI4th) — bank's release of lots from deed of trust — no breach of fiduciary duty**

Plaintiff bank did not breach a fiduciary duty to defendants by releasing certain lots from a deed of trust securing a promissory note executed by defendants where a mere debtor-creditor relationship existed between plaintiff and defendants, and the record does not reveal any facts suggesting that defendants reposed any sort of special confidence in plaintiff which would give rise to a fiduciary relationship.

**Am Jur 2d, Banks §§ 303 et seq.**

4. **Unfair Competition § 1 (NCI3d) — bank's release of lots from deed of trust — breach of contract — no unfair trade practice**

Plaintiff bank's alleged release of several subdivision lots from a deed of trust in violation of the terms of a promissory note and loan agreement executed by defendants did not constitute an unfair trade practice under N.C.G.S. § 75-1.1 where defendants failed to allege any aggravating circumstances beyond breach of contract which would support a claim for an unfair trade practice.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 696 et seq.**

APPEAL by defendants from order entered 3 May 1991 in CARTERET County Superior Court by *Judge Quentin T. Sumner.* Heard in the Court of Appeals 12 May 1992.

**BRANCH BANKING AND TRUST CO. v. THOMPSON**

[107 N.C. App. 53 (1992)]

*Howard, From, Stallings & Hutson, P.A., by John N. Hutson, Jr. and T. Mercedes Oglukian, for plaintiff-appellee.*

*Wheatly, Wheatly, Nobles & Weeks, P.A., by C. R. Wheatly, III, for defendant-appellants.*

GREENE, Judge.

Defendants appeal from an order filed 3 May 1991 granting partial summary judgment in favor of plaintiff pursuant to Rule 56 of the Rules of Civil Procedure.

Defendant/appellants Dr. Benjamin E. Thompson and Georgie C. Thompson (Thompsons) are individuals residing in Forsyth County, North Carolina. Plaintiff/appellee Branch Banking and Trust Company (BB&T) is a corporation located in Carteret County, North Carolina.

Sometime prior to March, 1984, defendants Charles and Margaret Sledge (Sledges), together with George and Janette Aljouny, arranged to borrow $275,000 from BB&T to purchase and develop certain lots into a subdivision known as Riverside Estates in Carteret County, North Carolina (Development). Some months later, after consulting with Charles Sledge, BB&T, Billy Joe Shoaf, their personal accountant, and William Paul Baldridge, their personal banker, the Thompsons purchased George and Janette Aljouny's one-half interest in the Development.

A promissory note (Note) dated 2 March 1984 in favor of BB&T in the amount of $275,000 bears the signatures of the Thompsons and the Sledges. As security for the Note, a deed of trust on a tract of property in the Development was executed and delivered to BB&T.

BB&T claims that the Thompsons subsequently defaulted in their payments under the Note, and that BB&T accelerated the balance of principal and interest due in accordance with the terms of the loan agreement and the Note. BB&T brought suit in Carteret County against the Thompsons on 6 October 1989 seeking the balance due of $89,490.18 plus interest. The Thompsons alleged, in defense, that their signatures on the Note were forgeries, that BB&T negligently released its deed of trust on several of the lots within the development, and that BB&T breached its fiduciary duty to them; furthermore, the Thompsons counterclaimed that the acts

of BB&T constituted an unfair trade practice and sought treble damages therefrom.

On 8 April 1991, BB&T moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. After considering the arguments of counsel, affidavits submitted, and the deposition of Dr. Benjamin E. Thompson, Judge Quentin T. Sumner granted partial summary judgment for BB&T on the Thompsons' defenses of negligence and breach of fiduciary duty, and on the Thompsons' counterclaim for unfair trade practices; Judge Sumner, however, denied summary judgment on the Thompsons' claim that the signatures on the Note are forgeries. From the granting of partial summary judgment for BB&T, the Thompsons appeal. Although the appeal is interlocutory, the trial court certified, pursuant to Rule 54(b) of the Rules of Civil Procedure, that "there is no just reason" in delaying the appeal of the issues presented.

---

The issues presented are: (I) whether a co-maker on a note can avail himself of the defense of negligent release or impairment of collateral; (II) whether the Thompsons are co-makers on the Note; (III) whether there exists a fiduciary duty between a bank and its customers; and (IV) whether the acts of BB&T were such as to constitute unfair trade practices.

I

[1] The Thompsons first contend that partial summary judgment for BB&T was improper on their defense of negligent release of collateral. The Thompsons take the position that under N.C.G.S. § 25-3-606 they are discharged from liability on the Note since BB&T was allegedly negligent in releasing its deed of trust on several of the lots in the development. BB&T answers by asserting that the Thompsons signed the Note as co-makers and, as such, are primarily liable on the Note without the benefit of the defense of discharge. We agree with BB&T.

N.C. Gen. Stat. § 25-3-606, in pertinent part, provides:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

. . . .

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

N.C.G.S. § 25-3-606(1)(b) (1986). A plain reading of the statute seems to indicate that *"any party* to the instrument" could be discharged, including makers, co-makers, sureties, etc.—in essence, any person appearing on the instrument. The Official Comment to N.C.G.S. § 25-3-606, however, provides that:

1. The words "any party to the instrument" remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are "secondarily liable," but are available to *any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so*. [Emphasis added.]

Thus, the drafters of the provision appear to limit the defense of discharge to those who sign an instrument as an accommodation party (surety), a position which an ordinary, non-accommodating, maker or co-maker does not occupy.[1] *White & Summers, supra*, at 588; *El-Ce Storms Trust v. Svetahor*, 724 P.2d 704, 707 (Mont. 1986).

There is some disagreement among the states as to whether Section 3-606 is applicable to all parties to an instrument or only to those who occupy the position of sureties. Some jurisdictions take the position that all parties, including non-accommodating makers and co-makers, can avail themselves of the defense of discharge. *See, e.g., Crimmins v. Lowry*, 691 S.W.2d 582 (Tex. 1985); *Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625 (Mo. App. 1983); *Southwest Florida Production Credit Ass'n v. Schirow*, 388 So. 2d 338 (Fla. Dist. Ct. App. 1980); *Rushton v. U.M. & M. Credit Corp.*, 434 S.W.2d 81 (Ark. 1968). However, a substantial majority of jurisdictions hold that only sureties are

---

1. "Any party to a negotiable instrument may be a surety if he signs for the accommodation of another party." Restatement of Security § 82 cmt. k (1941 & Supp. 1991-92); *see also First Citizens Bank & Trust Co. v. Larson*, 22 N.C. App. 371, 376, 206 S.E.2d 775, 779, *cert. denied*, 286 N.C. 214, 209 S.E.2d 315 (1974) ("an accommodation party is always a surety"). This would also include makers and co-makers who sign for accommodation purposes. *See* James J. White & Robert S. Summers, Uniform Commercial Code § 13-16 (3d ed. 1988) (hereinafter *White & Summers*).

entitled to the defense of discharge.[2] *White & Summers* at § 13-16.

The Official Comment to N.C.G.S. § 25-3-606 states that the statute discharges "any party who is in the position of a surety, having a right of recourse . . . ." Non-accommodating makers and co-makers do not have a "right of recourse" on the instrument. *White & Summers* at § 13-16; *Unum, Inc.*, 658 F.2d at 304. Non-accommodating makers and co-makers, alike, are always primarily liable on the debt and only possess a right of contribution against co-makers. *White & Summers* at § 13-16; *see also El-Ce Storms Trust*, 724 P.2d at 707. Sureties, on the other hand, are only secondarily liable on the debt, and retain "a right of recourse on the instrument for the full amount owing if [they are] made to pay." *El-Ce Storms Trust*, 724 P.2d at 707; *see also Unum, Inc.*, 658 F.2d at 304; *White & Summers* at § 13-16. A surety or accommodation party "is not liable to the party accommodated, and if he pays the instrument, has a right of recourse on the instrument against such party." N.C.G.S. § 25-3-415(5) (1986). As the Fifth Circuit Court of Appeals stated:

> Fairness dictates that if the risk a surety has agreed to undertake is increased through impairment of the securing collateral by the person to whom payment is due, the surety should be discharged to the extent of the impairment.

*Unum, Inc.*, 658 F.2d at 304-05.

The North Carolina cases which have addressed N.C.G.S. § 25-3-606 are consistent with this position. In *First Citizens Bank & Trust Co. v. Larson*, the Court of Appeals, citing to the Official Comment to N.C.G.S. § 25-3-606, held that the defense of discharge was available to "any party who is in the position of a surety," and then proceeded to apply the provision to an accommodation endorser. *Larson*, 22 N.C. App. at 376, 206 S.E.2d at 779. Furthermore, in *First American Savings Bank, FSB v. Adams*, 87 N.C.

---

2. Including: *Schmukie v. Alvey*, 758 S.W.2d 31 (Ky. 1988); *El-Ce Storms Trust*, 724 P.2d at 707; *Citizens State Bank v. Richart*, 476 N.E.2d 383 (Ohio App. 1984); *Bank of New Jersey v. Pulini*, 476 A.2d 797 (N.J. Super. 1984); *Farmers State Bank of Oakley v. Cooper*, 608 P.2d 929 (Kan. 1980); *Smiley v. Wheeler*, 602 P.2d 209 (Okl. 1979); *Wohlhuter v. St. Charles Lumber & Fuel Co.*, 338 N.E.2d 179 (Ill.2d 1975); *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 209 S.E.2d 573 (W.Va. 1974); *Oregon Bank v. Baardson*, 473 P.2d 1015 (Or. 1970); *United States v. Unum, Inc.*, 658 F.2d 300 (5th Cir. 1981).

App. 226, 360 S.E.2d 490 (1987), the defense of discharge was applied to guarantors.

Therefore, the defense of discharge provided in N.C.G.S. § 25-3-606 is available to all parties who occupy the position of an accommodation party and is not available to non-accommodating makers or co-makers.

## II

[2]  Although the issue of whether the Thompsons actually executed the Note has not yet been determined by the trial court, we assume for the purposes of evaluating this issue that the Note was indeed properly executed by the Thompsons and the Sledges. We therefore determine in what capacity the Thompsons executed the Note. Our courts have yet to address the factors to consider in determining whether a party to an instrument is an accommodation party. N.C. Gen. Stat. § 25-3-415 provides:

> (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

> (2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

N.C.G.S. § 25-3-415(1), (2) (1986). "Whether a person is an accommodation party is a question of intent." 6 Ronald A. Anderson, Uniform Commercial Code § 3-415:16, at 351 (3d ed. 1984) (hereinafter *Anderson*); Russell L. Wald, Annotation, *Who is Accommodation Party Under Uniform Commercial Code § 3-415*, 90 A.L.R.3d 342, 347 (1979). Where the intent of the parties does not appear on the face of the instrument, it must be ascertained in light of the surrounding facts and circumstances. Wald, *supra*, at 347; N.C.G.S. § 25-3-415(3) (1986) (except as against holders without notice, accommodation status may be established by parol evidence). In seeking to ascertain the intent of the parties, most courts have adopted some form of the "purpose" and "proceeds" tests. *See, e.g., Farmers State Bank of Oakley*, 608 P.2d at 934. Under the "purpose" test, inasmuch as an accommodation party must have signed the instrument "for the purpose of lending his name to another party to it," N.C.G.S. § 25-3-415(1) (1986), whether the creditor would have likely refused the primary maker "but for the supposed surety's

signature" is an important factor to consider. *White & Summers* at § 13-14. In other words, the accommodating party's signature must have been necessary for the primary maker to get the loan. *Id.; El-Ce Storms Trust*, 724 P.2d at 708. Under the "proceeds" test, the accommodating party cannot receive the primary benefits from the transaction,[3] *Anderson* at § 3-415:18, since this would be inconsistent with the party's status as a mere accommodation party. *White & Summers* at § 13-14. Other factors to consider are whether the party took place in negotiations prior to the transaction, *El-Ce Storms Trust*, 724 P.2d at 708, and the position of the party's signature on the face of the instrument itself. *White & Summers* at § 13-14.

·Under the facts of this case, the Thompsons entered this transaction as co-makers, and not as accommodation parties. First, the Thompsons' signatures to the Note appear on the lines reserved for co-makers. Second, the record reveals that their signatures were not given for the purpose of, and were not necessary for, aiding the Sledges in obtaining the loan. Rather, the Thompsons viewed the transaction as a business venture for which the Sledges had already secured the loan. Third, the Thompsons entered the venture with the expectations of receiving profits. Dr. Thompson testified at his deposition that he and his wife entered the transaction expecting to share equally in both the debts and the profits with the Sledges. As co-makers, they cannot avail themselves of the defense of discharge, and dismissal of this defense was proper.

III

[3] The Thompsons next contend that summary judgment was improper with regard to their defense that in releasing their deed of trust ·on the lots, BB&T breached its fiduciary duty to the Thompsons. We disagree.

A fiduciary duty arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Curl v. Key*, 311 N.C. 259, 264, 316 S.E.2d

---

3. This is not to say that an accommodation party cannot receive *any* benefit from the instrument. Unlike under pre-Code law, a party who receives a benefit from the transaction does not lose status as an accommodation party, even if the benefit is received directly from the transaction. *Anderson* at § 3-415:17. An accommodation party simply cannot receive the *primary* benefit from the instrument. *Anderson* at § 3-415:18.

272, 275 (1984). However, an ordinary debtor-creditor relationship generally does not give rise to such a "special confidence": "[t]he mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship." *United Virginia Bank v. Air-Lift Assocs., Inc.*, 79 N.C. App. 315, 322, 339 S.E.2d 90, 94 (1986) (applying Virginia law). *See also Wells v. North Carolina Nat'l Bank*, 44 N.C. App. 592, 596, 261 S.E.2d 296, 298 (1980) (holding that bank had no duty "to attend to details of plaintiff's [land] purchase other than the financial services it offered"). This is not to say, however, that a bank-customer relationship will never give rise to a fiduciary relationship given the proper circumstances. *See generally* 10 Am. Jur. 2d Banks §§ 303-307 (1963). Rather, parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the U.C.C. *Air-Lift*, 79 N.C. App. at 322, 339 S.E.2d at 94; *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990).

Here, the record does not reveal that any kind of relationship existed between the Thompsons and BB&T beyond that of mere debtor-creditor. Although Dr. Thompson testified at his deposition that he and his wife based their decision to enter the venture in part on the representations of the officers of BB&T, he testified that he also consulted with, and relied upon the statements of, his personal banker, his personal accountant and Mr. Sledge (with whom they had previously entered several business transactions) prior to entering the transaction. The record does not reveal any facts suggesting that the Thompsons reposed any sort of special confidence in BB&T which would serve to give rise to a fiduciary relationship. Therefore, this portion of the Thompsons' defense was also properly dismissed.

IV

[4] Lastly, the Thompsons contend that summary judgment was improper with regard to their counterclaim that BB&T's release of the deed of trust on the lots allegedly in violation of the Note constituted an unfair and deceptive trade practice in violation of N.C.G.S. § 75-1.1 (1988). We disagree.

Under N.C.G.S. § 75-1.1, a trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980). A trade practice is decep-

tive if it "has the capacity or tendency to deceive." *Id.* at 265, 266 S.E.2d at 622. It is well recognized, however, that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, *Lapierre v. Samco Dev. Corp.*, 103 N.C. App. 551, 559, 406 S.E.2d 646, 650 (1991), and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1. *Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 97 N.C. App. 511, 518, 389 S.E.2d 576, 580, *disc. rev. denied*, 326 N.C. 801, 393 S.E.2d 898 (1990); *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989). We agree with the Fourth Circuit Court of Appeals which, in construing N.C.G.S. § 75-1.1, stated that "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Bartolomeo*, 889 F.2d at 535.

It appears from the record and briefs of counsel that the gravamen of the Thompsons' counterclaim is that in releasing its deed of trust on several of the lots in the development, BB&T allegedly violated the terms of the Note and loan agreement, and has thus committed an unfair trade practice. The Thompsons fail to allege any acts beyond that of breach of contract, much less rising to the level of unfair or deceptive, which would sustain a claim for unfair trade practices. Therefore, the counterclaim was properly dismissed.

For the foregoing reasons, the order granting partial summary judgment is

Affirmed.

Judges PARKER and COZORT concur.