Allran v. Branch Banking & Trust Corp., 2011 NCBC 21.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
10 CVS 5482

NEIL EDGAR ALLRAN,

             Plaintiff,

v.

BRANCH BANKING & TRUST
CORPORATION, LAURA CORBETT,
and JOHN DOES 1 THROUGH 4,

             Defendants.

ORDER & OPINION

*Thomas A. Will, Jr. for Plaintiff Neil Edgar Allran*

*Womble Carlyle Sandridge & Rice, PLLC by Pressly M. Millen for Defendant
Branch Banking and Trust Corporation.*

Murphy, Judge.

{1}    This Court has before it the motion of Defendant Branch Banking and
Trust Corporation ("BB&T") to dismiss Plaintiff's Complaint pursuant to Rule
12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim
upon which relief can be granted.

{2}    The Motion seeks dismissal of all five causes of action alleged against
Defendant BB&T in the Complaint: (1) breach of fiduciary duty; (2) common law
fraud; (3) fraud in the inducement; (4) constructive fraud; and (5) violation of the
North Carolina Unfair and Deceptive Trade Practices Act (the "UDTPA"), section
75-1.1 of the North Carolina General Statutes.

{3} Having considered the Complaint, the briefs and submissions of the parties, and the arguments and contentions of counsel at the March 28, 2011 hearing, the Court **GRANTS** the Motion in part and **DENIES** it in part.

## I.

## PROCEDURAL BACKGROUND

{4} Plaintiff Neil Edgar Allran filed his Complaint on November 18, 2010.

{5} The matter was transferred to the North Carolina Business Court as a mandatory complex business case on December 20, 2010 and subsequently assigned to me.

{6} Defendant BB&T filed its Motion to Dismiss and supporting brief on January 21, 2011.

{7} Plaintiff filed his responsive brief in opposition to the Motion to Dismiss on February 12, 2011, and BB&T filed its reply on February 25, 2011.

{8} On March 28, 2011, the Court heard oral arguments on BB&T's Motion to Dismiss.

## II.

## FINDINGS OF FACT

{9} Plaintiff applied to Defendant BB&T for a loan to purchase unimproved real estate for $690,000.00.

{10} Initially, a BB&T loan officer informed Plaintiff that he did not qualify for a loan in an amount sufficient to make the purchase. The next day, however, the loan officer called Plaintiff and informed him that if Plaintiff deposited

$10,000.00 into Plaintiff's checking account with BB&T, she could get him qualified for the loan.

{11} Plaintiff borrowed $10,000.00 from his employer and placed it in his checking account. Thereafter, Plaintiff was approved for a loan in the amount of $621,000.00. He closed the loan on November 18, 2006.

{12} During the course of the loan approval process, Plaintiff alleges, *inter alia*, that without Plaintiff's knowledge or consent, Defendants prepared or caused to be prepared a HUD-1 statement that contained false information; that Defendants falsified parts of Plaintiff's loan application and personal financial statement and engaged in other deceptions.

{13} After closing the loan, Plaintiff defaulted when he was unable make payments.

{14} Plaintiff alleges that BB&T owed Plaintiff a fiduciary duty to: (1) approve Plaintiff only for a loan for which he could qualify and which he could repay; (2) ensure the HUD-1 and other closing documents were true and accurately reflected the loan transaction; (3) ensure the appraisal on the property was true and accurately reflected the fair market value of the property; (4) refrain from using false or incorrect data during the underwriting process; and (5) follow proper underwriting guidelines. Compl. ¶ 24.

{15} Plaintiff further alleges that BB&T breached its duty to Plaintiff by: (1) failing to use a truthful and accurate HUD-1 Settlement statement; (2) failing to use a contract that accurately described the terms of the transaction between

Plaintiff and BB&T; (3) falsifying parts of Plaintiff's loan application and personal financial statement; (4) misrepresenting the value of the property; (5) failing to inform Plaintiff of the actual value of the property; (6) misrepresenting that the property was a good investment; and (7) otherwise engaging in improper loan underwriting and closing procedures. Compl. ¶ 28.

{16} Plaintiff did not discover the alleged improprieties until he could no longer make his loan payments and the loan went into default in March 2009, approximately twenty-seven months after closing in November 2006.

## III.

## CONCLUSIONS OF LAW

### A.

### STANDARD OF REVIEW

{17} The question for the court on a motion to dismiss is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)). "The pleadings, when taken as true, [must be] legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995) (citing *Harris v. NCBC Nat'l Bank*, 85 N.C. App. 669, 355 S.E.2d 838 (1987)).

{18}    In analyzing the sufficiency of the complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, "the complaint must be liberally construed." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987) (citing *Jones v. City of Greensboro*, 51 N.C. App. 571, 277 S.E.2d 562 (1981)).

{19}    In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 613, 646 S.E.2d 826, 837 (2007) (quoting *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

B.

ANALYSIS

1.

Breach of Fiduciary Duty and Constructive Fraud

{20}    The two causes of action for breach of fiduciary duty and constructive fraud are related in that they are both predicated on a finding that BB&T and Plaintiff were in a relationship of trust and confidence.

{21}    To allege and prove a claim of constructive fraud, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty. *Bogovich v. Embassy Club of Sedgefield, Inc.*, No. COA10-16, 2011 N.C. App. LEXIS 729 at *14 (N.C. Ct. App. April 19, 2011) (citing *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 28, 560 S.E.2d 817, 823 (2002)).

{22}     Plaintiff contends that BB&T, in evaluating whether to loan money to Plaintiff, owed Plaintiff a duty to disclose the fair market value of the underlying real property being financed by BB&T and/or a duty of care regarding BB&T's loan-approval process.

{23}     A fiduciary duty arises when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Curl v. Key*, 311 N.C. 259, 264, 316 S.E.2d 272, 275 (1984) (quoting *Link v. Link*, 278 N.C. 181, 192, 179 S.E.2d 697, 704 (1971) (internal quotations omitted)).

{24}     An ordinary debtor-creditor relationship, however, generally does not give rise to such a "special confidence." *United Va. Bank v. Air-Lift Assocs., Inc.*, 79 N.C. App. 315, 322, 339 S.E.2d 90, 94 (1986) (applying Virginia law). "The mere existence of a debtor-creditor relationship between [the parties does] not create a fiduciary relationship." *Id.*; *see also Wells v. N.C. Nat'l Bank*, 44 N.C. App. 592, 596, 261 S.E.2d 296, 298 (1980) (holding that the bank had no duty "to attend to details of plaintiff's [land] purchase other than the financial services it offered").

{25}     This is not to say, however, that a bank-customer relationship will never give rise to a fiduciary relationship given the proper circumstances. *See generally* 10 Am. Jur. 2d Banks § 490 (2011). Rather, parties to a contract do not thereby become each others' fiduciaries and they generally owe no special duty to one another beyond the terms of the contract and the duties set forth in the Uniform Commercial Code. *Air-Lift*, 79 N.C. App. at 322, 339 S.E.2d at 94.

{26}   Here, Plaintiff does not allege in the Complaint that the relationship created with BB&T was anything more than the typical debtor-creditor relationship occasioned by his application for a loan to purchase real estate.

{27}   Absent that, the Court concludes as a matter of law that this was nothing more than an ordinary debtor-creditor relationship that does not give rise to a "special confidence" reposed in BB&T to act with due regard for Plaintiff's interests regarding the loan transaction beyond the terms of the loan agreement.

{28}   Plaintiff did not allege a "special confidence" in the Complaint, and no fiduciary relationship arose between the parties.  Plaintiff's breach of fiduciary duty and constructive fraud claims against BB&T, therefore, fail as a matter of law.

{29}   The Court hereby **GRANTS** BB&T's Motion to Dismiss with respect to these claims.

2.

Common Law Fraud & Fraud in the Inducement

{30}   Plaintiff alleges two additional fraud claims against BB&T in the Complaint: common law fraud and fraud in the inducement.  Plaintiff alleges that BB&T made false representations and/or concealed material facts regarding the loan transaction and the property purchase.  Compl. ¶¶ 32, 40.

{31}   To state a claim for fraud, the plaintiff must show: (1) a false representation or concealment of material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) that does in fact deceive, and (5) results in damage to the plaintiff. *Harrold v. Dowd*, 149 N.C. App. 777, 782, 561 S.E.2d 914,

918 (2002) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)).

{32} Rule 9(b) of the North Carolina Rules of Civil Procedure requires fraud claims to be pled with particularity. N.C.R. Civ. P. 9(b). "Mere generalities and conclusory allegations of fraud will not suffice." *Sharp v. Teague*, 113 N.C. App. 589, 597, 439 S.E.2d 792, 797 (1994) (quoting *Moore v. Wachovia Bank & Trust Co.*, 30 N.C. App. 390, 391, 226 S.E.2d 833, 835 (1976)).

{33} The particularity requirement of Rule 9(b) means that a plaintiff must specifically allege the time, place and content of the alleged fraudulent misrepresentation or concealment, and the identity of the person who concealed the information. *See Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

{34} As to the portion of Plaintiff's claims alleging fraud by affirmative misrepresentation of a material fact, the Court finds that the Complaint contains no specific allegations about the identity of speakers or the time and place where the fraudulent statements were made.

{35} Instead, Plaintiff generally alleges in the Complaint that Defendants "misrepresented the value of the property . . . [and] misrepresented that properties in the Cannonsgate development were good investments." Compl. ¶ 28.

{36} Plaintiff has failed to meet the particularized pleadings requirement of Rule 9(b) of the North Carolina Rules of Civil Procedure with respect to the alleged affirmative misrepresentations.

{37}    As to the portion of Plaintiff's claims alleging fraud by concealment, the Court acknowledges that "fraudulent concealment or fraud by omission is, by its very nature, difficult to plead with particularity." *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citing *Daher v. G.D. Searle & Co.*, 695 F. Supp. 436, 440 (D. Minn. 1988)).

{38}    Notwithstanding this difficulty, Magistrate Judge Russell Eliason set forth in *Breeden* the following pleading requirements that a plaintiff must satisfy in alleging fraud by concealment:

> (1) the relationship [between plaintiff and defendant] giving rise to the duty to speak, (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what [the defendant] gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

*Breeden*, 171 F.R.D. at 195 (citing *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993)).  Although it is not controlling law in this jurisdiction, this Court finds the pleading requirements of *Breeden* instructive and persuasive.

{39}    Here, Plaintiff alleges that BB&T failed to disclose to Plaintiff the actual value of the real property.  Specifically, Plaintiff alleges that BB&T knew that the appraisal value as well as the purchase price were "well in excess of the fair market value" of the real property.  Compl. ¶¶ 15-16.

{40}    Plaintiff, however, has not alleged any relationship which gives rise to a duty of BB&T to disclose the fair market value of the property to Plaintiff. Because BB&T merely had an arm's length debtor-creditor relationship with Plaintiff, it had no duty of disclosure to Plaintiff.  BB&T, therefore, cannot be held liable for fraud by concealment.

{41}    Even if the Complaint sufficiently alleged that BB&T had a duty to disclose this information to Plaintiff, it fails to set forth facts explaining why Plaintiff's reliance on BB&T's silence with respect to the loan transaction and property purchase was both reasonable and detrimental.

{42}    The Court finds that it was not reasonable for Plaintiff to rely on BB&T's appraisal value of the property (regardless of its accuracy) because this appraisal was conducted for the benefit of BB&T, not Plaintiff.  North Carolina banking regulations mandate appraisals in real property transactions where the loan amount is $250,000 or more. 12 C.F.R. §§ 323.3(a), (d)(2) (2011); 4 N.C.A.C. 3C.1001(4)(c) (2011).  Appraisals are not conducted for the benefit of borrowers, but instead to protect banks from making under-secured loans.  *See* 12 C.F.R. § 353.5 (2011).

{43}    Additionally, the Court is not persuaded by the argument that BB&T's silence regarding the accuracy of its appraisal prevented Plaintiff from conducting his own appraisal of the real property.

{44}    Fraud claims are "groundless where a purchaser of real property deals at arm's length and the purchaser has full opportunity to make inquiry but neglects

to do so and the seller resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation." *Hearne v. Statesville Lodge No. 687*, 143 N.C. App. 560, 561, 546 S.E.2d 414, 415 (2001) (citing *Calloway v. Wyatt*, 246 N.C. 129, 134, 97 S.E.2d 881, 885-86 (1957)).

{45}    Furthermore, Plaintiff fails to allege any facts which show that BB&T gained any benefit or advantage by withholding information about the actual value of the real property.  On the contrary, it seems to this Court that BB&T stands to lose, not gain, from making an under-collateralized loan to Plaintiff.

{46}    Finally, the Court notes that Plaintiff alleges BB&T falsified several documents pertaining to the loan, including the HUD-1 settlement statement, Plaintiff's loan application, and Plaintiff's personal financial statement.  These alleged misrepresentations, however, were not made to Plaintiff, but were directed to regulatory entities in order to qualify the loan, and as such, cannot support Plaintiff's fraud claims against BB&T.

{47}    Because Plaintiff's Complaint fails to allege specific facts to support fraud on the basis of either affirmative misrepresentations or concealments made by BB&T, Plaintiff's common law fraud and fraud in the inducement causes of action fail as a matter of law.

{48}    The Court hereby **GRANTS** BB&T's Motion to Dismiss with respect to these claims.

3.

Unfair and Deceptive Trade Practices

{49}    To state a claim under the North Carolina Unfair and Deceptive Trade

Practices Act (the "UDTPA"), section 75-1.1 of the North Carolina General Statutes,

the plaintiff must allege "(1) defendants committed an unfair or deceptive act or

practice, (2) in or affecting commerce, and (3) plaintiff was injured as a result."

*Phelps-Dickson Builders, LLC v. Amerimann Partners*, 172 N.C. App. 427, 439, 617

S.E.2d 664, 671 (2005) (citing *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d

920, 923 (1998)).

{50}    "A practice is unfair when it offends established public policy as well as

when the practice is immoral, unethical, oppressive, unscrupulous, or substantially

injurious to consumers." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.,*

192 N.C. App. 74, 82, 665 S.E.2d 478, 486, (2008) (internal quotations omitted).

{51}    In making a claim of unfair and deceptive trade practices on a theory

of misrepresentation or fraud, a plaintiff must show that a defendant's conduct

possessed "the tendency or capacity to mislead" or create the likelihood of deception.

*Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 702, 671 S.E.2d 7, 12 (2009)

(citing *Marshall v. Miller,* 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)).

{52}    "Where an unfair or deceptive trade practice claim is based upon an

alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance'

on the alleged misrepresentation in order to establish that the alleged

misrepresentation 'proximately caused' the injury of which plaintiff complains."

*Tucker v. Blvd. At Piper Glen LLC,* 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002).

{53}     In the Complaint, Plaintiff does not allege that BB&T made an affirmative misrepresentation of a material fact directly to Plaintiff or to anyone in privity with Plaintiff, but that BB&T, without Plaintiff's knowledge or consent, falsified the HUD-1 statement and falsified parts of Plaintiff's loan application and personal financial statement; that these acts were deceptive; were in and affecting commerce; and Plaintiff was injured as a result.

{54}     In fact, Plaintiff alleges in the Complaint that he did not discover any of BB&T's improprieties or the consequences thereof until March 2009 when he defaulted on his loan by nonpayment.  Compl. ¶ 26.

{55}     Nonetheless, Plaintiff alleges in his complaint, with specificity, both misrepresentation and deception by Defendant, that such conduct was a business activity in and affecting commerce and that Defendant's conduct proximately caused injury and damage to Plaintiff.

{56}     Given the standard of review for a motion to dismiss for failure to state a claim upon which relief can be granted, the Court concludes as a matter of law that the Complaint alleges minimally sufficient facts to support a cause of action for violation of the UDTPA.

{57}     The Court hereby **DENIES** BB&T's Motion to Dismiss with respect to this claim.

## IV.

## CONCLUSION

{58}   The Court **GRANTS** BB&T's Motion to Dismiss with respect to Plaintiff's claims for breach of fiduciary duty, constructive fraud, common law fraud, and fraud in the inducement; and **DENIES** the Motion with respect to Plaintiff's claim for violation of the UDTPA.

{59}   Wherefore, the Court hereby **DISMISSES** the Second, Third, Fourth and Fifth causes of action against Defendant BB&T alleging common law fraud, fraud in the inducement, constructive fraud and breach of fiduciary duty, respectively.

{60}   Plaintiff's First cause of action against BB&T for violation of the UDTPA has been sufficiently pled and, therefore, is not dismissed.

This the 6th day of July, 2011.