An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-166

Filed 7 January 2026

Mecklenburg County, No. 23CVS001064-590

MAXIMILIAN BUTLER, Plaintiff,

v.

MILLENNIUM ADVISORS, LLC, MICHAEL HEALY, and DAVID CHAPELLE, Defendants.

Appeal by plaintiff from order entered 28 March 2024 by Judge Bradley B. Letts in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 August 2025.

> *Gardner Skelton PLLC, by Nicole K. Haynes, Jared E. Gardner and Jon P. Carroll for plaintiff-appellant.*

> *Nelson Mullins Riley & Scarborough LLP, by Phillip J. Strach, Cassie A. Holt and Alyssa M. Riggins for defendant-appellees.*

DILLON, Chief Judge.

This case arises from a dispute over an alleged failure to pay wages. Plaintiff contends that Defendants acted in violation of the North Carolina Wage and Hour Act for unpaid Unit Incentive Bonus Agreement units and severance benefits among other claims. For the reasons stated below, we affirm the trial court's decision.

## I.    Background

In 2013, Plaintiff Maximilian Butler began working for Defendant Millennium Advisors, LLC, a broker-dealer bond trading firm.  Most of Plaintiff's compensation was in the form of Unit Incentive Bonuses ("UIBs").  Each year during his employment, Plaintiff would sign a UIB Agreement which specified the number of Common Units in Millennium that he would be granted.  Each UIB had a vesting schedule that was set to begin three years after the date of the UIB agreement, and it would span over three annual issuances.  Additionally, each UIB Agreement had a non-compete clause, stating that Defendant "shall have the option to terminate [the UIB] Agreement for cause" if Plaintiff were to compete after termination.

The relationship between Plaintiff and Defendant became strained.  As a result, on 25 October 2019, Plaintiff entered an "employment, severance, release and waiver agreement" (the "Release Agreement") with Defendant to exit the company.  In this agreement, Plaintiff was paid a $100,000 severance payment in exchange for compliance with the terms and conditions of the agreement.  Additionally, Plaintiff had the potential to be paid an additional $300,000 subject to the condition that he would not perform the same or similar services for one of Defendant's competitors unless Defendant gave advance written consent for him to do so.

On 28 August 2020, Plaintiff emailed Defendant to inquire regarding what type of work he could do to not violate the prior agreements he signed with Defendant.

Defendant advised Plaintiff to seek legal counsel, as they could not answer this question. On 25 November 2020, Plaintiff again reached out to Defendant to ask if accepting employment from Zeus Financial would impact his agreements with Defendant. Defendant asked Plaintiff to email a copy of the job description. Plaintiff informed Defendant that the offer letter did not list the specific job responsibilities of his new role. Defendant did not respond, Plaintiff did not follow up and provide a job description, and Plaintiff accepted employment from Zeus Financial as a Structured Product Analyst on 30 November 2020. After conducting research on the company and Plaintiff's role, Defendant believed that Plaintiff was working for a direct competitor. As a result, Defendant notified Plaintiff that his unvested units and agreements were cancelled for "cause."

After extensive back and forth, Plaintiff and Defendant were unable to come to an agreement regarding Plaintiff's new role and a compromise on the unpaid UIBs or severance payment. As a result, on 7 February 2023, Plaintiff filed suit against Millennium Advisors, LLC, Michael Healy, and David Chappelle ("Defendants") alleging claims for: (1) violation of the North Carolina Wage and Hour Act ("NCWHA"), (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, (4) unfair and deceptive trade practices ("UDTP"), and (5) unjust enrichment. Plaintiff moved for partial summary judgment for the breach of contract claim, and Defendants moved for summary judgment on all claims. On 28 March 2024, the trial court entered an order denying Plaintiff's motion for summary judgment and

granting Defendants' motion for summary judgment regarding the NCWHA and UDTP claims.

Millennium moved for attorneys' fees and costs pursuant to the NCWHA and UDTP based on the summary judgment order. Subsequently, Plaintiff moved for the trial court to reconsider its order on summary judgment. On 25 September 2024, the trial court entered an order denying both the motion for attorneys' fees and reconsideration. Plaintiff appealed.

## II. Jurisdiction

The trial court's grant of partial summary judgment is interlocutory. *Liggett Group v. Sunas*, 113 N.C. App. 19, 23 (1993). And Plaintiff has not indicated that the order affects a substantial right. However, the trial court did certify the matter for immediate appeal pursuant to Rule 54(b) of our Rules of Civil Procedure.

A Rule 54(b) certification is effective to certify an otherwise interlocutory appeal only if the trial court has entered a final judgment with regard to a party or a claim in a case which involves multiple parties or multiple claims. *See DKH Corp. v. Rankin–Patterson Oil Co.,* 348 N.C. 583 (1998). In other words, a Rule 54(b) certification is only effective if the partial summary judgment order is final and removes a party or claim entirely from the case.

Here, the partial summary judgment was final as to two of the five claims. Therefore, the Rule 54(b) certification is effective as to those claims to confer appellate jurisdiction.

III.  Analysis

Plaintiff raises three issues on appeal.  First, Plaintiff asserts the trial court reversibly erred by granting Defendant's motion for summary judgment regarding the NCWHA for failure to pay wages pursuant to the UIB Agreement.  Second, Plaintiff asserts the trial court reversibly erred by granting Defendant's motion for summary judgment regarding the NCWHA for failure to pay wages pursuant to the employment and severance agreement.  Finally, Plaintiff argues the trial court reversibly erred by granting Defendant's motion for summary judgment pertaining to the UDTP claim.  We address each in turn.

"The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524 (2007).

A.  Failure to pay wages pursuant to the UIB Agreement

First, Plaintiff argues that the trial court erred in granting Defendant's motion for summary judgment regarding the NCWHA claim for failure to pay wages pursuant to the UIB Agreements.  The initial complaint, however, only claimed a violation of the Wage and Hour Act regarding the "severance payment."  It did not mention the UIB agreement or payments until count two of the complaint, pertaining to a breach of contract.

"Because a contention not made in the court below may not be raised for the first time on appeal . . . the [contention] was not properly presented . . . and is therefore not properly before this Court." *Higgins v. Simmons*, 324 N.C. 100, 103

(1989) (citing *Plemmer v. Matthreson*, 281 N.C. 722 (1972)). "A party may not exchange his trial horse for what he perceives to be a steadier mount on appeal." *Id.* (citing *State v. Benson,* 323 N.C. 318 (1988)).

The issue regarding a failure to pay wages under the NCWHA pursuant to the UIB Agreement was never addressed at the trial level, in the initial claims or in any motion for summary judgment. Because it was not brought up at the trial level, the issue is being raised for the first time on appeal to our Court. Therefore, this issue is not properly before us and we decline to address the merits of this issue.

B. Failure to pay wages pursuant to the Severance Agreement

Second, Plaintiff contends the trial court erred by granting Defendant's motion for summary judgment regarding the NCWHA claim for failure to pay wages pursuant to the Severance Agreement.

The North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1 *et seq*., was "enacted to safeguard the hours worked by and the wages paid to the people of the State without jeopardizing the competitive position of North Carolina business and industry." *Horack v. Southern Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 309 (citation omitted). An employer who violates the NCWHA is liable to the employee for wages owed. N.C.G.S. § 95-25.22(a). NCWHA defines wage as

> compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other

facilities. For the purposes of G.S. 95-25.6 through G.S. 95-25.13 includ[ing] sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments.

N.C.G.S. § 95-25.2(16). "A statute such as this one, "that is *free from ambiguity, explicit in terms and plain of meaning* must be enforced as written, without resort to judicial construction." *Washburn v. Yadkin Valley Bank and Trust Co.*, 190 N.C. App. 315, 324 (2008) (citation omitted).

The "Severance Compensation" section of the Severance Agreement states in part as follows:

> Contingent upon execution of this Agreement by Employee . . . the Company shall pay to the Employee (i) $100,000.00 (six months at current base salary), for and in consideration of the provisions . . . and other terms and conditions of this Agreement (the "Severance Payment"). . . . Additionally, the Company will pay Employee $300,000 which will vest and be paid on March 31, 2022 if Employee does not, without the advance and written consent of the Company, directly or Indirectly, Compete where the Employee is to perform, directly or Indirectly, any services which are the same or similar to the services performed or provided by the Employee for the Company or its Affiliates.

The Severance Agreement clearly states that the initial $100,000 would be paid to Plaintiff as a severance payment, whereas the remaining $300,000 would be vested and paid on 31 March 2022 if Plaintiff did not enter into work with a competitor without advance written notice and consent from Defendant. It is undisputed that Plaintiff received the full $100,000 Severance Payment. Because the

definition of wage is fully enumerated, and non-compete compensation is not listed as a form of wage under the NCWHA, the remaining $300,000 is not considered a wage and thus the NCWHA is not applicable.

## C. UDTP claims

Finally, Plaintiff contends that the trial court erred by granting Defendant's motion for summary judgment regarding the UDTP claims. Specifically, Plaintiff contends that Defendant's actions constitute an unfair or deceptive trade practice because it affects commerce by suppressing "competition" and its actions are deceptive, immoral, unethical, oppressive, and/or unscrupulous.

"To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing Inc. v. Pollard*, 101 N.C. App. 450, 460–61 (1991); *see also* N.C.G.S. § 75-1.1. The statute does not apply to every transaction that might be viewed as unfair or deceptive but applies only if the alleged violator is engaged in "commerce." *Faucette v. 6303 Carmel,* 242 N.C. App. 267, 275 (2015).

"A trade practice is deceptive if it has the capacity or tendency to deceive." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61-62 (1992) (internal quotation omitted). Actions which are considered to be unfair or deceptive trade practices are distinguishable from actions for a breach of contract, *Lapierre v. Samco Dev. Corp.,* 103 N.C. App. 551, 559 (1991), and "a mere breach of contract, even if

intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1." *Branch Banking and Trust Co.*, 107 N.C. App. at 62 (citing *Mosley & Mosley Builders, Inc. v. Landin Ltd.,* 97 N.C. App. 511, 518 (1990)). Additionally, our Court has held that "a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Branch Banking and Trust Co.*, 107 N.C. App. at 62 (citing *Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir. 1989)).

Plaintiff failed to meet the burden of showing any substantial aggravating circumstances to show that Defendant's actions were more than an alleged breach of contract. Therefore, the trial court did not err in granting summary judgment regarding the UDTP claim.

## IV. Conclusion

For the reasoning stated above, we hold that the trial court did not err in granting partial summary judgment for the Defendants pertaining to the NCWHA and UDTP claims.

AFFIRMED.

Judges STROUD and GORE concur.

Report per Rule 30(e).