Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC, 2017 NCBC 68.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

STRATEGIC MANAGEMENT
DECISIONS, LLC,

          Plaintiff,

v.

SALES PERFORMANCE
INTERNATIONAL, LLC; KEITH M.
EADES; DOUGLAS HANDY; AND
ROBERT KEAR,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 3061

**ORDER AND OPINION ON
MOTION TO DISMISS**

1.    Plaintiff Strategic Management Decisions, LLC ("Plaintiff") is one of two members of Sales Talent Optimization, LLC ("STO"). Plaintiff contends that the other member, Defendant Sales Performance International, LLC ("Sales Performance"), wrongfully acquired the intellectual property of Plaintiff and STO, used the intellectual property to usurp STO's business opportunities, and competed against Plaintiff and STO in violation of contractual and fiduciary duties. Plaintiff further contends that three officers of Sales Performance—Keath Eades, Douglas Handy, and Robert Kear ("Individual Defendants")—are individually liable.

2.    Defendants jointly moved to dismiss some, but not all, claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. They contend that this is a simple contract dispute between two corporations, with no basis for additional tort claims or individual liability.

3. Having considered the parties' filings and arguments, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss.

*Caudle & Spears, P.A. by Christopher P. Raab, and Martenson, Hasbrouck & Simon, LLP by Peter V. Hasbrouck and Christopher J. Perniciaro for Plaintiff.*

*Robinson, Bradshaw & Hinson, P.A. by Stephen M. Cox, Kevin R. Crandall, and Adam K. Doerr for Defendants.*

Conrad, Judge.

I.
BACKGROUND

4. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the complaint and the attached exhibits.

5. Plaintiff "is an employee survey, assessment, and analytics company." (Compl. ¶ 8.) Defendant Sales Performance is a company "engaged in sales consulting." (Compl. ¶ 9.)

6. The two companies jointly formed STO on March 10, 2014 for the purpose of creating a "sales talent optimization technology platform." (Compl. ¶ 17.) According to the complaint, Plaintiff supplied the intellectual property needed to create the platform, and Sales Performance agreed to use its expertise to sell the platform for STO's benefit. (Compl. ¶ 17; *see also* Compl. ¶ 19.) Plaintiff and Sales Performance executed an Intellectual Property License and Services Agreement ("IP Agreement") "to govern the use and ownership of intellectual property" being contributed by each, as well as intellectual property that would be jointly created through STO. (Compl. ¶ 18, Ex. 2 ["IP Agreement"].)

7. STO's Operating Agreement governs the company's membership and management. (*See* Compl. Ex. 1 ["Operating Agreement"].) Sales Performance owns a 60 percent membership interest in STO, and Plaintiff owns the remaining 40 percent. (*See* Operating Agreement p.A-1; *see also* Compl. ¶¶ 15–16.) Each member has the power to designate one manager. (*See* Operating Agreement ¶ 5.3(a).) The two managers, who must be individuals, together "have full, exclusive and complete authority to manage the affairs of" STO, except for certain defined acts that require unanimous member approval (such as voluntary dissolution, amendment of the articles of organization, and conversion of the company into another form of business). (Operating Agreement ¶ 5.1; *see also* Operating Agreement ¶ 6.3.)

8. STO was "immediately successful"—so successful that Sales Performance sought to purchase Plaintiff's interest in December 2014. (Compl. ¶¶ 20–21.) Plaintiff obtained a valuation, but Sales Performance rejected it without explanation and without making a counteroffer. (*See* Compl. ¶¶ 21–22.)

9. Plaintiff now characterizes the episode as "pretextual" and alleges that Sales Performance has been competing against it and STO ever since. (Compl. ¶ 23.) The complaint alleges that Sales Performance used the intellectual property supplied by Plaintiff to "creat[e] a separate sales talent optimization technology platform" and then usurped business opportunities that should have gone to STO. (Compl. ¶¶ 23–25.) The net result, according to Plaintiff, is that Sales Performance "took" the interest that it refused to buy. (Compl. ¶ 23.)

10.     Plaintiff filed its complaint on January 14, 2017.  It asserts five causes of action:   breach of the IP Agreement and breach of fiduciary duty as to Sales Performance; and conversion, unfair or deceptive trade practices, and unjust enrichment as to all Defendants.  The complaint does not assert any derivative claims on behalf of STO.  (*See* Pl.'s Resp. to Defs.' Mot. to Dismiss 2 n.1 ["Pl.'s Resp."].)

11.     On April 26, 2017, Defendants jointly moved to dismiss all claims except breach of the IP Agreement.  The motion is fully briefed, and the Court held a hearing on July 25, 2017.  The motion is ripe for determination.

II.
ANALYSIS

12.     A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint."  *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim."   *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

13.     In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party.  *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970).   "[T]he court is not required to accept as true any

conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001). In addition, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers," without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Weaver v. St. Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (quoting *Oberlin Capital*, 147 N.C. App. at 60, 554 S.E.2d at 847).

## A. Conversion

14. Conversion is "defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (citation omitted). "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008).

15. Plaintiff's conversion claim has evolved over time. The complaint broadly alleges that Defendants converted Plaintiff's "intellectual property, including but not limited to [Plaintiff's] assessment and analytics technology." (Compl. ¶ 35.) In its briefing, Plaintiff pares back the allegation, stating that the claim "is not for patent, trademark, or copyright conversion" but is instead "correctly categorized as conversion of 'proprietary information.'" (Pl.'s Resp. 5.) At the hearing, Plaintiff further clarified that the property at issue is primarily software.

16. The nature of the allegedly converted property is important because North Carolina does not recognize a claim for conversion of intangible interests. *See, e.g.*, *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000) (citing "business opportunities and expectancy interests" as "intangible interests"); *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *57–58 (N.C. Super. Ct. July 14, 2015) (dismissing conversion claim as to trademark rights). On the other hand, a conversion claim may cover proprietary information in certain circumstances. *See Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 331, 572 S.E.2d 200, 207 (2002).

17. For purposes of this motion, the Court liberally construes the complaint to allege the conversion of "electronically stored proprietary information," as Plaintiff's brief states. (Pl.'s Resp. 5.) Although the intellectual property identified in the IP Agreement includes patents, copyrights, and trademarks, it also includes other technology and products, which apparently comprise the relevant software. (*See* IP Agreement pp.15–16; *see also* Pl.'s Resp. 5 (referring to certain "technology platforms," "assessments," and "employee surveys").) The Court further assumes, without deciding, that this property could be the subject of a conversion claim.

18. Even so, Plaintiff has failed to allege that it was deprived of this information. The complaint states only that the information was "copied, reproduced, and disseminated to various third parties without [Plaintiff's] authorization or consent." (Compl. ¶ 29.) Plaintiff's sur-reply similarly states that its "allegations encompass misappropriation of a physical copy" of electronically stored information.

(Pl.'s Surreply 1.) As this Court has recently held, "making a copy of electronically-stored information which does not deprive the plaintiff of possession or use of information, does not support a claim for conversion." *RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at \*53 (N.C. Super. Ct. June 20, 2016); *see also Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at \*17 (N.C. Super. Ct. June 9, 2017); *RoundPoint Mortg. Co. v. Florez*, 2016 NCBC LEXIS 18, at \*55 (N.C. Super. Ct. Feb. 18, 2016); *Horner Int'l Co. v. McKoy*, 2014 NCBC LEXIS 68, at \*8 (N.C. Super. Ct. Dec. 18, 2014).

19. The Court therefore grants the motion to dismiss as to the claim for conversion. The Court need not address Defendants' alternative arguments, including their argument that the claim is preempted by the federal Copyright Act.

B. Unfair or Deceptive Trade Practices

20. Plaintiff's claim under N.C. Gen. Stat. § 75-1.1 is also the subject of some ambiguity. The complaint restates all preceding paragraphs without identifying the acts that are alleged to be unfair or deceptive trade practices. (*See* Compl. ¶¶ 48–51.) At the hearing, Plaintiff's counsel clarified that the claim is limited to Defendants' alleged taking of Plaintiff's technology and that it does not concern the alleged taking of STO's technology or usurpation of its business opportunities.

21. The clarification considerably narrows the issue. The alleged unfair trade practices are essentially identical to the alleged conversion and breach of the IP Agreement: that Sales Performance "copied, reproduced, and disseminated" Plaintiff's intellectual property and proprietary information. (Compl. ¶ 28.) Having

already dismissed the conversion claim, the Court further agrees with Defendants that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992).

22. Appellate precedent routinely holds that a section 75-1.1 violation "is unlikely to occur during the course of contractual performance," and "these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 781 S.E.2d 889, 893 (N.C. Ct. App. 2016) (quoting *Mitchell v. Linville*, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623–24 (2001)). Plaintiff has not alleged the type of "substantial aggravating circumstances," such as fraud, necessary to transform a breach of contract into a section 75-1.1 claim. *Branch Banking & Trust*, 107 N.C. App. at 62, 418 S.E.2d at 700. At most, Plaintiff's allegation that Sales Performance "purposefully" copied and disseminated its intellectual property would constitute an intentional breach of the IP Agreement, which is insufficient to state a claim for unfair or deceptive trade practices. (Compl. ¶ 29.)

23. Accordingly, the Court grants the motion to dismiss as to the claim for unfair or deceptive trade practices.

## C. Breach of Fiduciary Duty

24. Plaintiff alleges that Sales Performance, as the majority member of STO, breached a fiduciary duty owed to Plaintiff, as the minority member. (*See* Compl. ¶ 41; *see also* Compl. ¶ 42.) Sales Performance contends that there is no fiduciary

relationship between STO's members and that, in any event, the parties waived and disclaimed any fiduciary duties in the Operating Agreement. (*See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss Claims Under Rule 12(b)(6) 8, 11 ["Defs.' Br."].)

25. The law does not favor claims by one LLC member against another for breach of fiduciary duty. As the North Carolina Court of Appeals has explained, the North Carolina Limited Liability Company Act "does not create fiduciary duties among members." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). Rather, members of an LLC "are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Id.*

26. Plaintiff relies on an exception to this general rule. Citing *Kaplan*, a few recent cases have stated that "a holder of a majority interest who exercises control over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016); *see also Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at *18 (N.C. Super. Ct. Dec. 29, 2016); *SCA-Blue Ridge, LLC v. WakeMed*, 2016 NCBC LEXIS 2, at *20 (N.C. Super. Ct. Jan. 4, 2016); *Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *14–15 (N.C. Super. Ct. Oct. 30, 2013).

27. The scope of this exception, borrowed from precedents governing corporations, remains unsettled. This Court has cautioned against a broad application because of the fundamental differences between LLCs and corporations. *See HCW Ret. & Fin. Servs.*, 2015 NCBC LEXIS 73, at *47 n.102; *see also Blythe v. Bell*, 2013 NCBC LEXIS 17, at *13–14 (N.C. Super. Ct. Apr. 8, 2013). Unlike a

corporation, "[a]n LLC is primarily a creature of contract." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 to 34-3 (rev. 7th ed. 2016)). The rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships. *See* N.C. Gen. Stat. § 57D-2-30 ("The operating agreement governs the internal affairs of an LLC and the rights, duties, and obligations of . . . the interest owners . . . in relation to each other"). Especially where the members have bargained for comprehensive terms to govern their relationship, the imprudent imposition of fiduciary duties could "undermine the contractual nature of an Operating Agreement." *HCW Ret. & Fin. Servs.*, 2015 NCBC LEXIS 73, at *47 n.102.

28. With these principles in mind, the Court concludes that Plaintiff has not adequately alleged the existence of a fiduciary relationship. Plaintiff first contends that Sales Performance's "mere possession of a majority interest in STO created a fiduciary relationship with [Plaintiff] as a minority interest holder." (Pl.'s Br. 11.) That is simply wrong. Even in the context of corporate shareholders, "the element of *control* is what gives rise to a fiduciary duty between the controlling shareholder and the minority." *Emergys Corp. v. Consert, Inc.*, 2012 NCBC LEXIS 19, at *21 (N.C. Super. Ct. Apr. 5, 2012) (emphasis added); *see also Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344–45, 67 S.E.2d 350, 353 (1951) (stating "the fact of control . . . creates the fiduciary obligation on the part of the majority stockholders"); *Freese v. Smith*, 110

N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993) ("In North Carolina, it is well established that a controlling shareholder owes a fiduciary duty to minority shareholders.").

29. Plaintiff insists that a majority interest "creates a presumption of a control that cannot be overcome by only considering the pleadings." (Pl.'s Br. 11.) That may be true for corporations. *See Corwin v. British Am. Tobacco PLC*, 796 S.E.2d 324, 332 (N.C. Ct. App. 2016) ("[A] majority shareholder is presumed to be a controlling shareholder." (internal quotation omitted)), *review allowed* 799 S.E.2d 616 (N.C. 2017). Plaintiff has neither cited authority extending the rule to LLCs nor explained why it would be sensible to do so. There is little reason to believe that control presumptively goes hand in hand with a majority interest in an LLC. "Parties to an LLC Operating Agreement can alter statutory default rules," *Island Beyond*, 2013 NCBC LEXIS 48, at *15, and minority members of an LLC have "the freedom of contract . . . to obtain minority protections not available to shareholders of [a] closely-held corporation," *Blythe*, 2013 NCBC LEXIS 17, at *14.

30. The STO Operating Agreement is a case in point. It conclusively rebuts any presumption of majority control, to the extent one exists. Although Sales Performance owns 60 percent of STO, it has no meaningful ability to use that interest to exercise control over the company. Plaintiff and Sales Performance are not "agents of" STO and do "not have any authority to manage or control the business and affairs of the Company or to sign for or act on behalf of the Company." (Operating Agreement § 6.1.) The Operating Agreement instead vests "full, exclusive and complete authority to manage the affairs of the Company" in two managers. (Operating

Agreement § 5.1.)  Plaintiff and Sales Performance each have "the power to designate" one manager, and any action of the managers must be unanimous.  (Operating Agreement §§ 5.3(a), 5.4, 5.5, 5.8.)  Likewise, the Operating Agreement prohibits amendment of the articles of organization, conversion of STO into another form of business, voluntary dissolution or liquidation, and numerous other actions in the absence of "the approval of Members holding one hundred percent" of the membership interest units.  (Operating Agreement § 6.3.)

31.  Plaintiff has been able to identify only one action that the Operating Agreement authorizes Sales Performance to take without Plaintiff's cooperation or approval: determining the amount to pay the managers for their services.  (Operating Agreement § 5.6; *see also* Operating Agreement § 6.2.)  It may well be that Sales Performance is obliged to exercise this power fairly and in good faith.  The complaint does not allege that it has been abused, and in any event, it is insufficient standing alone to turn Sales Performance's majority interest into a controlling interest for other purposes.

32.  In view of the comprehensive terms of the Operating Agreement, Plaintiff has failed to allege the control necessary to demonstrate a fiduciary relationship between STO's members.  Plaintiff successfully bargained for numerous protections for its minority interest.  Imposing an additional fiduciary duty on Sales Performance (the majority interest owner), outside of its contractual duties, would be inconsistent with the parties' bargain and with this State's policy of "giv[ing] the maximum effect to the principle of freedom of contract and the enforceability of operating

agreements." N.C. Gen. Stat. § 57D-10-01(c); *see also Related Westpac LLC v. JER Snowmass LLC*, C.A. No. 5001-VCS, 2010 Del. Ch. LEXIS 158, at *30–31 (Del. Ct. Ch. July 23, 2010) (applying Delaware law and holding that "[w]hen a fiduciary duty claim is plainly inconsistent with the contractual bargain struck by parties to an LLC . . ., the fiduciary duty claim must fall").

33. The Court has considered and finds unpersuasive Plaintiff's other arguments, including its contention that STO's status as a joint venture gives rise to an independent fiduciary relationship. Plaintiff and Sales Performance chose to organize their joint enterprise as an LLC, and it is therefore subject to the laws governing LLCs. Moreover, the complaint does not allege a fiduciary relationship on this basis. *See Se. Shelter Corp.*, 154 N.C. App. at 327, 572 S.E.2d at 204–05 (discussing "essential elements of a joint venture").

34. The Court therefore grants the motion to dismiss the claim for breach of fiduciary duty. Having concluded that no fiduciary relationship has been alleged, the Court need not address Defendants' alternative argument that the Operating Agreement disclaimed any fiduciary duties.

### D. Unjust Enrichment

35. Plaintiff's unjust enrichment claim is based on the allegation that it "provided a benefit to the Defendants in the form of access to its intellectual property." (Compl. ¶ 53.) Defendants seek to dismiss the claim solely on the ground that unjust enrichment is not an appropriate remedy where the parties have an express contract (here, the IP Agreement). (Defs.' Br. 16–17.)

36.     The Court concludes that Plaintiff may plead its unjust enrichment claim in the alternative. It is unclear whether the claim for breach of the IP Agreement (which is between Plaintiff and Sales Performance only) perfectly aligns with the claim for unjust enrichment (which is against all Defendants), and the limited briefing on the issue does not provide a reasoned basis for dismissing the claim as to Sales Performance but not as to the Individual Defendants. Defendants may eventually succeed in demonstrating that the IP Agreement bars any recovery for unjust enrichment, but the better course is not to dismiss the unjust enrichment claim at this stage despite the claim for breach of contract. The Court therefore denies the motion to dismiss the claim for unjust enrichment. *See, e.g.*, *Krawiec v. Manly*, 2016 NCBC LEXIS 7, at *31 (N.C. Super. Ct. Jan. 22, 2016) (denying motion to dismiss unjust enrichment claim).

### III.
### CONCLUSION

37.     For these reasons, the Court **GRANTS** the motion to dismiss the claims for conversion, unfair or deceptive trade practices, and breach of fiduciary duty. Plaintiff has not previously amended its complaint or attempted to cure any defects in its pleading, and these claims are therefore **DISMISSED** without prejudice. *See First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013) ("The decision to dismiss an action with or without prejudice is in the discretion of the trial court."). The Court **DENIES** the motion as to the claim for unjust enrichment.

This the 7th day of August, 2017.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases